[No. C059192. Third Dist. June 19, 2009.]

In re THOMAS HOVANSKI on Habeas Corpus.

## COUNSEL

Eric Weaver, under appointment by the Court of Appeal, for Petitioner Thomas Hovanski.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Catherine Chatman, Deputy Attorneys General, for Respondent the Secretary of the California Department of Corrections and Rehabilitation.

## OPINION

**BUTZ, J.**—This petition for habeas corpus comes before us after the California Supreme Court issued an order requiring the secretary of California's Department of Corrections and Rehabilitation (CDCR) to show cause before this court why petitioner Thomas Hovanski should not be granted relief, based upon CDCR's extension of parole past his parole discharge date by placing a hold on him pursuant to Welfare and Institutions Code section

6601.3.[1] Section 6601.3 authorizes the Board of Parole Hearings (BPH)[2] to order that an inmate referred to the State Department of Mental Health (DMH) for evaluation as a potential sexually violent predator (SVP) "remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to [the SVPA]."

Hovanski was serving the last day before his parole discharge date when BPH ordered a hold placed on him under section 6601.3 (45-day hold). A month later, the district attorney filed a petition seeking to commit him as an SVP.

Hovanski contends section 6601.3 does not authorize the extension of custody beyond his parole discharge date; that section 6601.5, not section 6601.3, was the sole means by which CDCR could detain him past his discharge date; and that the 45-day hold was therefore void. He further argues that if his continued custody past his discharge date was authorized by section 6601.3, it constituted a retroactive increase in his prison sentence, which was barred by state and federal constitutional prohibitions against ex post facto laws. We reject these arguments and shall deny the petition.

## PROCEDURAL BACKGROUND

*Events leading up to the habeas corpus petition*

Following his conviction in 1995 of multiple sex crimes involving children under the age of 14, Hovanski was committed to state prison. He was paroled initially in November 2002. However, Hovanski violated his parole and was returned to prison on July 24, 2006 (all further calendar references are to that year unless otherwise indicated), to serve out the remainder of his term. On that date, the CDCR determined that his maximum confinement would terminate on December 15. Consequently, Hovanski was given a certificate of discharge, confirming his revocation release and discharge from parole as of December 15.

On October 24, CDCR completed an SVP screening form, indicating that Hovanski met the criteria as a potential SVP pursuant to section 6600. On November 4, CDCR completed a justification referral sheet, referring Hovanski for screening and evaluation pursuant to section 6601, subdivision (a)(1) of the SVPA.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. All sections of that code cited herein are within the Sexually Violent Predator Act (SVPA) (§ 6600 et seq.).

[2] The BPH replaced the Board of Prison Terms by legislation enacted in 2005. (See Gov. Code, § 12838.4 [added by Stats. 2005, ch. 10, § 6, operative July 1, 2005] & Pen. Code, § 5075 [as amended by Stats. 2005, ch. 10, § 46, operative July 1, 2005].) It is sometimes referred to by its former appellation.

On November 29, CDCR referred Hovanski to the DMH for full evaluation. On December 8, he received a second level screening from a DMH physician.

On December 14, while Hovanski was serving the last day in prison before his scheduled discharge from parole, DMH wrote to the BPH, requesting that it schedule a probable cause hearing for purposes of imposing a 45-day hold pursuant to section 6601.3. The letter concluded that DMH was requesting the hold "in order to complete full evaluation pursuant to [section] 6601[,] [subdivisions] (c) to (i), inclusive." On the same day, BPH imposed a 45-day hold on Hovanski under section 6601.3. As a result, Hovanski was not released from prison on his discharge date.

On January 26, 2007, the Yuba County District Attorney filed a petition to commit Hovanski as an SVP. (§ 6602.) Three days later, the superior court ordered him temporarily held in custody pending a probable cause hearing. On April 27, 2007, the court, after a probable cause hearing, ordered that Hovanski remain in the custody of the CDCR pending the outcome of trial on the petition.

*Habeas corpus proceedings*

On July 12, 2007, Hovanski filed a petition for writ of mandate in this court alleging that at the time the petition to commit him as an SVP was filed, he was subject to an illegal parole hold. (*Hovanski v. Superior Court*, C056213.) After requesting informal opposition, this court denied the petition on August 16, 2007.

On February 25, 2008, with trial on the SVP petition still pending, Hovanski filed a pro se petition for writ of habeas corpus in the California Supreme Court, complaining that BPH had exceeded its authority in placing an unauthorized 45-day hold on him, thereby resulting in his "unlawful custody" beyond his parole discharge date.

In June 2008, the California Supreme Court, after requesting and receiving informal opposition from the Attorney General, ordered the Secretary of CDCR to show cause before this court "why [Hovanski] is not entitled to relief based on the extension of his parole period past his parole discharge date pursuant to Welfare and Institutions Code section 6601.3." (*In re Hovanski* (order to show cause issued June 27, 2008, S161147).)

Having received full briefing and heard oral argument, we now deny the petition.

## DISCUSSION

### I. Validity of the Section 6601.3 Hold

The Legislature enacted the SVPA based upon a declared concern that "a small but extremely dangerous group of sexually violent predators [who] have diagnosable mental disorders [that] can be identified while they are incarcerated . . . are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence." (Stats. 1995, ch. 762, § 1, p. 5913.) An SVP is a person who has committed a sexually violent offense against multiple victims and is likely to engage in sexually violent criminal behavior in the future because of a diagnosed mental disorder. (§ 6600, subd. (a)(1).)

The SVPA sets up a screening process for determining whether an inmate who is "in custody" and "under the jurisdiction" of the CDCR should be committed as an SVP. (§ 6601, subd. (a)(1).) If the CDCR determines that an inmate may be an SVP, it shall refer the person for evaluation "at least six months prior to that individual's scheduled date for release from prison," unless he was received with less than nine months remaining on his sentence or his release date was modified, in which case the six-month minimum does not apply. (§ 6601, subd. (a)(1).)

If the CDCR determines the inmate is a likely SVP, he is referred to the DMH for a full evaluation. (§ 6601, subd. (b).) If two mental health professionals at DMH agree the defendant "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody" (§ 6601, subd. (d)), the DMH must forward a request for a petition for civil commitment to the county in which the defendant was convicted (§ 6601, subd. (h); see *People v. Hayes* (2006) 137 Cal.App.4th 34, 42 [39 Cal.Rptr.3d 747]). If county counsel or the district attorney agrees with the recommendation, a petition for civil commitment is filed in superior court. (§ 6601, subds. (d), (i).) An SVP petition may be filed "if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, *or a hold placed pursuant to Section 6601.3*, at the time the petition is filed." (§ 6601, subd. (a)(2), italics added.)

Hovanski argues that the 45-day hold placed on him under section 6601.3 was illegal because the statute cannot authorize the continued incarceration of a parolee past his discharge date. He relies on Penal Code section 3000, subdivision (b)(5), which provides that, "[u]pon successful completion of parole, or at the end of the maximum statutory period of parole specified for the inmate [by statute], whichever is earlier, the inmate *shall* be discharged from custody." (Italics added.) Hovanski reasons that because civil custody

pursuant to the SVPA does not begin until a judge makes a probable cause determination, "any hold pursuant to [Welfare and Institutions Code] section 6601.3 can only be based on the authority to extend an existing term of custody, i.e., the prior sentence and parol[e] period."

Hovanski's argument is inconsonant with the language of the SVPA. Section 6601.3 states: "Upon a showing of good cause, the Board of Prison Terms may order that a person referred to the State Department of Mental Health pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days beyond the person's scheduled *release date* for full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601." (Italics added.)

■ Because a parolee remains subject to the CDCR's legal custody and may be taken back inside the prison at any time during his parole (Pen. Code, § 3056), the statutory scheme contemplates that an inmate who has violated his parole and is returned to custody near the completion of his term may still be referred to the DMH for evaluation as an SVP. This is clear from Welfare and Institutions Code section 6601, subdivision (a)(1), which makes the SVPA applicable to inmates who are "either serving a determinate prison sentence *or whose parole has been revoked.*" (Italics added.) Furthermore, while an SVP evaluation ordinarily must be made "at least six months prior to that individual's scheduled date for release from prison" (§ 6601, subd. (a)(1)), referral to the DMH is also permitted when parole has been revoked and the inmate is nearing completion of his sentence: "[I]f the inmate was received by [CDCR] with less than nine months of his or her sentence to serve, . . . the [S]ecretary may refer the person for [an SVP] evaluation in accordance with this section at a date that is less than six months prior to the inmate's *scheduled release date*" (*ibid.*, italics added), which, in the case of an inmate whose parole has been revoked, is the same as his scheduled discharge from custody.[3]

Hovanski nevertheless asserts that when section 6601.3 refers to an inmate's "scheduled release date," it means his release from *prison* but not his release from parole. Again, the statutory language refutes his claim.

■ When construing statutes, the goal is " ' "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." ' " (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919 [76 Cal.Rptr.3d 483, 182 P.3d 1027].) We examine the words of the statute by giving them their ordinary and usual

---

[3] Hovanski's parole was revoked, and he was received by CDCR, with less than nine months of his sentence to be served. Thus, the six-month deadline did not apply, and the referral for an SVP evaluation could be made up to his scheduled discharge from custody.

meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent. (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516 [87 Cal.Rptr.3d 475, 198 P.3d 560].)

The SVPA " 'is aimed at protecting society from, and providing treatment for, that "small but extremely dangerous group of sexually violent predators" who have diagnosable mental disorders identified while they are incarcerated for designated violent sex crimes, and who are determined to be unsafe and, if released, to represent a danger to others through acts of sexual violence.' " (*Garcetti v. Superior Court* (2000) 85 Cal.App.4th 1113, 1117 [102 Cal.Rptr.2d 703], quoting Stats. 1995, ch. 763, § 1, pp. 5921–5922.) To best effectuate this purpose, we must presume that when the Legislature used the word "release" in section 6601.3, it intended to use the term in its most commonly understood sense. "Release" means the "discharge from obligation or responsibility"; "the state of being liberated or freed." (Webster's 3d New Internat. Dict. (1993) p. 1917, col. 2.) A parole *discharge* date for a prisoner such as Hovanski, who is serving the remainder of his term in prison due to the revocation of parole, is the date he is due to be *released* from custody. Since section 6601.3 authorizes the DMH to extend an inmate's custody for 45 days past his "release date" for purposes of completing its evaluation, the hold placed on him on December 14, 2006, literally complied with the terms of the statute.

Our interpretation comports with the CDCR's official records. When Hovanski violated his parole and was sent back to prison, the CDCR "Parole Violator Legal Status Summary" notes: "MRRD: 12/15/2006." In response to our request for supplemental briefing, both parties agreed that the acronym "MRRD" stands for "Maximum Revocation *Release Date*," which also corresponds to Hovanski's discharge date. Thus, December 15, 2006, was both Hovanski's discharge date *and* his release date. Section 6601.3, which authorized the CDCR to hold him for 45 days past his "scheduled release date," was properly invoked when BPH placed him on a 45-day hold on December 14, 2006.

Hovanski contends that section 6601.5 is the exclusive statutory method for holding an inmate past his parole discharge date.[4] We are not persuaded. The various parts of a statutory enactment must be harmonized by

---

[4] Section 6601.5 provides in relevant part: "Upon filing of the petition and a request for review under this section, a judge of the superior court shall review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. If the judge determines that the petition, on its face, supports a finding of probable cause, the judge shall order that the person be detained in a secure facility until a hearing can be completed pursuant to Section 6602."

considering the particular clause or section in the context of the statutory framework as a whole. (*Kray Cabling Co. v. County of Contra Costa* (1995) 39 Cal.App.4th 1588, 1592 [46 Cal.Rptr.2d 674].) █ As noted in *People v. Badura* (2002) 95 Cal.App.4th 1218 [116 Cal.Rptr.2d 336], although section 6601.5 originally provided for " 'urgency review' " for a parolee whose term was about to expire, it now allows the People to seek probable cause review in all cases where a petition has been filed. (*Badura*, at pp. 1222–1223.) Section 6601.5 does not apply in Hovanski's case because, by its own terms, it applies only *after* an SVP petition has been filed. Section 6601.3, which provides for a temporary hold, is the section applicable where, as here, the DMH's evaluation has not yet been completed.

## II.  Ex Post Facto

Hovanski contends that "[i]f section 6601.3 is construed to permit the extension of an already completed parole term, such a grant of authority would constitute an unconstitutional ex post facto law because, in effect, it is retroactively increasing [his] completed sentence, i.e., the prison term plus the parole term."

█ The claim lacks merit because it is based on the unstated assumption that continued custody for evaluation and treatment under the SVPA constitutes "punishment." That notion was put to rest in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584], where the California Supreme Court, adhering closely to the decision of the United States Supreme Court in *Kansas v. Hendricks* (1997) 521 U.S. 346 [138 L.Ed.2d 501, 117 S.Ct. 2072], concluded that the SVPA, a statute similar to the Kansas act examined in *Hendricks*, "does not 'affix culpability' or seek 'retribution' for criminal conduct," but rather is a civil commitment statute. (*Hubbart, supra*, at p. 1175, quoting *Hendricks, supra*, 521 U.S. at pp. 361–362 [138 L.Ed.2d at p. 515].) Because it does not impose punishment, the SVPA does not infringe on the constitutional prohibition on ex post facto laws. (*Hubbart, supra*, 19 Cal.4th at pp. 1178–1179; see also *People v. Yartz* (2005) 37 Cal.4th 529, 536 [36 Cal.Rptr.3d 328, 123 P.3d 604] [" 'an SVPA commitment proceeding is a special proceeding of a civil nature . . .' "].) Here, section 6601.3 came into play only because Hovanski had been referred to DMH for evaluation pursuant to subdivision (b) of section 6601. This evaluation was civil in nature. Because Hovanski's confinement pursuant to the SVPA was not punishment, the time he spent awaiting full evaluation as an SVP candidate under section 6601.3 did not add to or increase his prison sentence, and therefore did not violate state or federal ex post facto prohibitions.

## DISPOSITION

The petition for writ of habeas corpus is denied. The order to show cause is discharged.

Scotland, P. J., and Sims, J., concurred.

Petitioner's petition for review by the Supreme Court was denied September 9, 2009, S174209.