Filed 1/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>ANDREW JOSEPH PARKER,<br><br>   Defendant and Respondent. | 2d Crim. No. B294553<br>(Super. Ct. No. 18PT-00854)<br>(San Luis Obispo County) |

      The Mentally Disordered Offender Act (MDO Act) provides that individuals with severe mental disorders who are convicted of certain felonies may be ordered to participate in inpatient mental health treatment after they have completed their prison terms. (Pen. Code,[1] § 2960 et seq.) To qualify as a mentally disordered offender (MDO), a prisoner must have "been in treatment for the severe mental disorder for 90 days or more within the year prior to [their] parole or release." (§ 2962, subd. (c).) Here we consider whether treatment during an extension of a prisoner's custodial time to complete a psychiatrist's

---

    [1] All further unspecified statutory references are to the Penal Code.

evaluation (see § 2963) may be included in the required 90 days of treatment. We conclude that it can.

The Attorney General appeals from the trial court's order finding that Andrew Joseph Parker did not meet the criteria to be treated as an MDO because he did not receive 90 days of treatment before his scheduled parole date. He contends treatment during the additional 45-day custody period authorized by the Board of Parole Hearings (Board) pursuant to section 2963 should have counted toward the 90 days of treatment required by section 2962, subdivisions (c) and (d)(1). We agree, and reverse.

**FACTS AND PROCEDURAL HISTORY**

On December 19, 2017, Parker pled no contest to making criminal threats (§ 422). The trial court sentenced him to two years in state prison. Over the next two months, Parker received 17 days of mental health treatment while housed in the county jail.

Parker was delivered to the California Department of Corrections and Rehabilitation (CDCR) on February 16, 2018, with a scheduled release date of March 31. Daily treatment at CDCR for Parker's mental disorder began on February 22. On March 20, the Board ordered Parker to remain in custody for 45 days beyond his scheduled release date, through May 14. Treatment of Parker's mental health disorder continued during this period. On May 11, the Board determined that he had been in treatment for his mental disorder for the required 90 days.

Parker challenged the Board's determination in the trial court (§ 2966, subd. (b)), arguing that section 2963's 45-day extension period did not count toward section 2962's 90-day treatment requirement. The court agreed, and reversed the

2

Board's determination that Parker met the criteria for MDO treatment.

## DISCUSSION

To uphold a Board determination committing a prisoner for MDO treatment, the prosecution must prove that the prisoner "has been in treatment for [a] severe mental disorder for 90 days or more within the year prior to [their] parole or release." (§ 2962, subd. (c); *People v. Foster* (2019) 7 Cal.5th 1202, 1207.) The 90-day treatment period may begin while the prisoner is in county jail, but no earlier than the day they are convicted. (*People v. Achrem* (2013) 213 Cal.App.4th 153, 157, 159.) "Upon a showing of good cause, [the Board] may order that a person remain in custody for no more than 45 days beyond [their] scheduled release date for full evaluation." (§ 2963, subd. (a).) "[G]ood cause" includes "the receipt of the prisoner into custody, or equivalent exigent circumstances [that] result in there being less than 45 days prior to the person's scheduled release date for the evaluations." (§ 2963, subd. (b).)

Here, Parker received 17 days of treatment while in county jail. And because he went to prison fewer than 45 days before his scheduled release date, the Board found exigent circumstances to retain him in custody for an additional 45 days for his MDO evaluation. Whether treatment during that period can help to satisfy the criteria of section 2962 is the question we must resolve.

This question presents an issue of statutory interpretation, which we review de novo. (*People v. Morales* (2018) 25 Cal.App.5th 502, 509.) When interpreting a statute, we first examine its plain language, "giving the words their usual, ordinary meaning." (*People v. Canty* (2004) 32 Cal.4th 1266,

1276.)  We "give meaning to every word of [the] statute if possible, and . . . avoid a construction [that renders] any word surplusage." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22.)  We interpret the language "in the context of the statute as a whole and the overall statutory scheme, [giving] 'significance to every word, phrase, sentence, and part of [the] act in pursuance of the legislative purpose.  [Citation.]'  [Citations.]" (*Canty*, at p. 1276.)  If the statutory language is unclear, we may examine its legislative history to help determine the Legislature's intent. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

*Plain meaning*

Read in isolation, subdivision (c) of section 2962 is clear:  The prisoner must receive treatment "for 90 days or more within the year prior to [their] parole or release."  "Release on parole is the actual transfer of a prisoner confined in prison to parole supervision in the community." (Cal. Code Regs., tit. 15, § 2355.)  In "its most commonly understood sense," the word "'release'" means "'the state of being liberated or freed[]' [citation] . . . the date [a person] is due to be *released* from custody." (*In re Hovanski* (2009) 174 Cal.App.4th 1517, 1525, original italics.)  The plain meaning of subdivision (c) would thus include treatment during a 45-day extension because it precedes the prisoner's release from custody.

Subdivision (c) is not the only language in section 2962 regarding the timing of the treatment requirement, however.  Subdivision (d)(1) provides that "[*p*]*rior to release on parole*," the chief psychiatrist must certify "that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to [their] *parole release day*." (Italics added.)  Parker contends that this language limits the calculation

4

of treatment days to those occurring before his originally scheduled parole release date, May 14, 2018.

But the overall legislative scheme allows consideration of treatment days during a lawful extension of the original parole date. The language of section 2962, subdivision (c), mirrors that in section 2981, which permits the admission of certified records "[f]or the purpose of proving the fact that a prisoner has received 90 days or more of treatment within the year prior to the prisoner's parole *or release*." (Italics added.) Section 2966, subdivision (b) provides for a trial court hearing on whether the individual "*as of the date of* [*the Board*] *hearing*, met the criteria of [s]ection 2962." (Italics added.) And section 2963, subdivision (a) permits the Board to "order that a person remain in custody for no more than 45 days beyond [their] scheduled release date for full evaluation." Nothing in these provisions prohibits continued treatment or consideration of that treatment in determining whether the section 2962 criteria are met.

Parker challenges the plain meaning of section 2963, asserting that it does not extend a prisoner's "parole release date" but instead places a "hold" on them. He relies in part on a Board form that characterizes the 45-day extension as a "hold." But the statute does not use this term. It states that the Board may order the person "remain in custody" beyond the "scheduled release date." (§ 2963, subd. (a).) The form's characterization of the 45-day custody period as a "hold" or "extension" does not undermine section 2963's plain meaning.[2]

---

[2] In a footnote, Parker argues that section 2963 cannot be interpreted as authorizing the Board to modify a scheduled parole release date because section 2963 does not include a due process method to challenge the Board's determination. He

The Legislature enacted section 2963 because "there is often insufficient time to make an MDO evaluation before a scheduled release date." (*People v. Gerard* (2015) 243 Cal.App.4th 242, 247.) "In past cases, MDO's who should have received treatment were released because of such timing issues. That undermined the treatment goals of the MDO statute, presenting a threat to public safety. Section 2963 corrected this problem by vesting the Board with jurisdiction to place holds on the release dates so that MDO's who need treatment would receive it. We interpret the statute to accomplish this legislative goal." (*Id.* at p. 248.)

The same is true here. Without the 45-day extension, timing issues would have made it impossible to evaluate Parker as an MDO. The timing of delivery from county jail to prison should not determine which individuals are in need of MDO commitment.

Parker argues that allowing inclusion of treatment time during a section 2963 extension would encourage prison officials to delay necessary treatment because they could simply extend the time to provide such treatment. But there is no evidence of unnecessary delay or bad faith here. And the release date can be extended only upon a showing of good cause, such as

contrasts a 45-day extension pursuant to section 2963 with a denial of good-time custody credits for misconduct pursuant to section 2932 because the latter provides an opportunity for administrative challenge. (§ 2932, subd. (a)(5).) We decline to consider this argument because it is undeveloped, raised only in a footnote, and not specified by a separate heading or subheading. (*Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 314, fn. 24; *Bridgeman v. McPherson* (2006) 141 Cal.App.4th 277, 288.)

receipt of a prisoner fewer than 45 days before their scheduled release date, which is what occurred with Parker.

One function of the required 90 days of treatment is to facilitate evaluation of whether the criteria for MDO treatment have been met.  In *People v. Martin* (2005) 127 Cal.App.4th 970, 974-975, we concluded that the required 90 days of treatment included treatment in county jail before transportation to state prison.[3]  We reasoned, "The purpose of the MDO law is to protect the public by identifying those prisoners who would pose a danger to society upon release due to their mental disorder. [Citation.]  This purpose is advanced by allowing the 90-day treatment requirement to be satisfied by inpatient treatment within a county jail. . . . It is reasonable to count the treatment [a prisoner] received in jail prior to [their] transportation to prison so that MDO status may be determined based on [the] prisoner's dangerous propensities and mental condition, rather the fortuity of [their] sentencing date." (*Ibid*.)  The same purpose is served by considering treatment during a 45-day extension period.  Otherwise, the fortuity of a sentencing date could leave insufficient time for evaluation of the MDO criteria.

An additional function of the 90-day treatment criterion is that it "encourages [CDCR] to identify mentally ill prisoners and commence treatment sooner rather than later, [which] benefits a prisoner by ensuring that an effort will be made to ameliorate [their] condition before that condition is used as a ground to deny release on parole." (*People v. Martin, supra*, 127 Cal.App.4th at p. 975.)  Continued treatment during a 45-day

---

[3] In *People v. Achrem, supra*, 213 Cal.App.4th at page 157, we disapproved *Martin* to the extent it allowed inclusion of preconviction treatment in county jail.

extension serves the same function, giving the prisoner an additional opportunity to ameliorate their mental health condition so that MDO commitment may become unnecessary.

*Legislative history*

Though the plain meanings of sections 2962 and 2963 are clear, we note that legislative history supports our conclusion. The requirement of 90 days' treatment within a year of parole or release was first added to the MDO Act in 1985. (Stats. 1985, ch. 1419, § 1 (Sen. Bill No. 1296), amending a former version of section 2960.) The requirement that the chief psychiatrist's evaluation include certification "that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to [their] parole release day" was added to section 2962, subdivision (d), in 1987. (Stats. 1987, ch. 687, § 7 (Sen. Bill No. 425).) In interpreting the meaning of the 1987 legislation, we take judicial notice of legislative history materials. (Evid. Code, §§ 452, subd. (c), 459, subd. (a); *Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19 [departmental enrolled bill reports]; *Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413, 1420-1424 & fn. 10 [legislative committee reports].) These documents demonstrate that the purpose of the 1987 amendment was technical in nature, did not intend to make substantive changes, and was designed to make the chief psychiatrist's certification conform to the criteria used at the certification hearing. (Sen. Com. on Judiciary, com. on Sen. Bill No. 425 (1987-1988 Reg. Sess.) as amended May 4, 1987, pp. 2-3; Assem. Com. on Public Safety, com. on Sen. Bill No. 425 (1987-1988 Reg. Sess.) as amended May 4, 1987, p. 2; Board of Prison Terms, Analysis of Sen. Bill No. 425 (1987-1988 Reg. Sess.) June 10, 1987, pp. 2-3.)

The 1987 legislation made two other changes that reinforce our conclusion. First, it enacted section 2981 to permit the admission of certified records "[f]or the purpose of proving the fact that a prisoner has received 90 days or more of treatment within the year prior to [their] parole or release." (Stats. 1987, ch. 687, § 11.) Second, it provided for trial court hearings to determine whether the MDO treatment criteria were met "*as of the date of* [*the Board*] *hearing*." (§ 2966, as amended by Stats. 1987, ch. 687, § 8, italics added.) These simultaneous changes demonstrate that the Legislature intended to retain rather than change the requirement that a prisoner's treatment be within a year of parole *or release*.

We conclude that the criteria for MDO commitment were satisfied here because Parker completed at least 90 days of treatment for his severe mental disorder before he was paroled or released. The treatment that occurred during the lawful extension of his release date counts toward the 90-day requirement. The Board's order should have been upheld.

## DISPOSITION

The trial court's order vacating the Board's MDO determination is reversed.

<u>CERTIFIED FOR PUBLICATION.</u>


TANGEMAN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

9

Jesse John Marino, Judge

Superior Court County of San Luis Obispo

_____

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Zee Rodriguez, Susan Sullivan Pithey and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Appellant.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Respondent.