[No. B175517. Second Dist., Div. Six. Mar. 24, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ANTHONY MARTIN, Defendant and Appellant.

972

COUNSEL

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COFFEE, J.**—Michael Anthony Martin appeals from an order of the superior court committing him to the State Department of Mental Health (DMH) for treatment as a mentally disordered offender (MDO). (Pen. Code, §§ 2962, 2966.)[1] He argues that he did not qualify as an MDO because he did not

---

[1] All statutory references are to the Penal Code unless otherwise stated.

receive at least 90 days of mental health treatment during the year preceding his parole release date and that his underlying offense was not a crime of force or violence. We affirm.

## FACTS

Appellant has a long history of mental illness, which includes auditory hallucinations and delusions among its symptoms. He has received Social Security disability benefits for his condition, has undergone inpatient mental health treatment and has been prescribed a number of medications which target perceptual disturbances, mood instability and anxiety.

On November 3, 2003, appellant was sentenced to 16 months in prison after he pled guilty to a charge of recklessly evading a peace officer under Vehicle Code section 2800.2. Upon his arrival at the North Kern State Prison Reception Center on December 12, 2003, he was almost immediately placed in the infirmary due to his mental status. Appellant was selectively mute, refused to maintain his physical hygiene and had been smearing feces in his cell, on his lunch tray and on other property. An order permitting the involuntary administration of psychotropic medication was obtained on December 19.

Appellant's parole release date was January 28, 2004, less than two months after his arrival at the prison, due to his having accumulated almost a full year of presentence custody credits. The Board of Prison Terms certified that appellant met the MDO criteria and appellant petitioned for a review of this certification pursuant to section 2966. Appellant waived his right to a jury determination of the issue and his MDO status was confirmed following a court trial.

## DISCUSSION

### *90-Day Treatment Requirement*

The MDO law is a civil commitment scheme targeting state prisoners with severe mental disorders who are about to be released on parole. Once a prisoner has been certified as an MDO, inpatient treatment under the supervision of DMH is usually required unless DMH certifies that the prisoner can be treated in an outpatient program. (§§ 2962, 2964.) Among the six criteria necessary for an MDO commitment is a showing "that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day." (§ 2962, subd. (d)(1).)

Appellant argues that the only treatment that counts toward this 90 days is treatment received under the auspices of the Department of Corrections

(CDC) or DMH. He contends this element was not satisfied in his case, where the duration of his treatment at CDC relative to his parole release date was less than two months. The People acknowledge that appellant received less than 90 days of treatment at CDC. But they argue that the 90-day criterion was satisfied because appellant was also treated for several months while he was in pretrial custody in the Los Angeles County jail.

Appellant relies primarily on our decision in *People v. Del Valle* (2002) 100 Cal.App.4th 88, 92–93 [121 Cal.Rptr.2d 889], in which we held the 90-day requirement was not satisfied where the defendant had been treated for only 85 days while a prisoner at CDC. Although the defendant in *Del Valle* had also received at least five days of outpatient treatment at a community clinic before his incarceration, we concluded that this community treatment could not count toward the 90 days. Noting that all health treatment following an MDO determination is "planned, approved and implemented" through DMH, and is conducted on an inpatient basis unless DMH certifies that outpatient treatment would be safe and effective, we reasoned that it would be inconsistent with the statutory scheme to allow outpatient community treatment to fulfill the 90-day requirement. (*Id.* at p. 93.)

We agree with the People that *Del Valle* is not controlling in this case. The time which the People seek to have credited to the 90-day period was not spent in outpatient community treatment, as in *Del Valle*, but was provided in a custodial setting at the county jail while the defendant was awaiting trial. Section 2981 provides, "For the purpose of proving the fact that a prisoner has received 90 days or more of treatment within the year prior to the prisoner's parole or release, the records or copies of records of any state penitentiary, *county jail*, federal penitentiary, or state hospital in which that person has been confined, when the records or copies thereof have been certified by the official custodian of those records, may be admitted as evidence." (Italics added.) The Legislature thus contemplates that in some cases, treatment counting toward the 90-day period will be rendered at the jail before a defendant is sent to prison.

The purpose of the MDO law is to protect the public by identifying those prisoners who would pose a danger to society upon release due to their mental disorder. (*People v. Dyer* (2002) 95 Cal.App.4th 448, 455 [115 Cal.Rptr.2d 527].) This purpose is advanced by allowing the 90-day treatment requirement to be satisfied by inpatient treatment within a county jail. In this case, for example, appellant arrived at prison with less than 90 days left to serve on his sentence. One reason for this is that criminal proceedings were suspended to determine his mental competency. If criminal proceedings had not been suspended, and if appellant had been sentenced and transported to the prison on an earlier date, he presumably would have been treated in

prison for at least 90 days. It is reasonable to count the treatment appellant received in jail prior to his transportation to prison so that MDO status may be determined based on a prisoner's dangerous propensities and mental condition, rather the fortuity of his sentencing date.

Nor is it unfair to the prisoner to count mental health treatment in the county jail toward the 90-day treatment criterion. That criterion encourages CDC to identify mentally ill prisoners and commence treatment sooner rather than later, and benefits a prisoner by ensuring that an effort will be made to ameliorate his condition before that condition is used as a ground to deny release on parole. When a prisoner begins to receive treatment even prior to sentencing and transfer to CDC, there is no danger that a delay in treatment will contribute to the MDO determination.

■ Having concluded that a prisoner's inpatient treatment at the county jail may count toward the 90-day treatment criterion necessary for an MDO determination, we consider whether the trial court properly found that appellant received 90 days of treatment. ■ We review the court's finding on an MDO criterion for substantial evidence, drawing all reasonable inferences, and resolving all conflicts, in favor of the judgment. (*People v. Valdez* (2001) 89 Cal.App.4th 1013, 1016 [107 Cal.Rptr.2d 783]; *People v. Poe* (1999) 74 Cal.App.4th 826, 830 [88 Cal.Rptr.2d 437].)

Applying this deferential standard, the evidence was sufficient to support the judgment. The parties stipulated that the court could receive and consider the MDO evaluations prepared by psychologists Elizabeth Gates, Ph.D. and Robert Weber, Ph.D. Dr. Weber noted in his report that appellant had been treated at the Twin Towers County Jail in Los Angeles since his arrest on March 6, 2003. This evidence was introduced without objection and supports a finding by the court that appellant was treated for at least 90 days on an inpatient basis during the year before his parole release date on January 28, 2004.

Appellant notes that Dr. Gates concluded he did not meet the 90-day criterion. Dr. Gates made it clear in her report that she reached this conclusion because she believed mental health services received in county jail would not count toward the 90 days. As we have explained, this is an erroneous premise. Appellant also cites the testimony of his treating psychiatrist, Dr. Mary Flavan, who opined that he had been treated for 90 days but was unable to offer any details about the duration or nature of his treatment in the county jail. Although Dr. Flavan's testimony would not itself be sufficient to support a finding of 90 days of treatment, the court could infer from Dr. Weber's report, received as it was without objection, that appellant was treated from the date of his arrest on March 6, 2003.

Although legally sufficient, we observe that the evidence on the 90-day treatment criterion could have been more fully developed. In the future, we encourage the district attorney to make use of section 2981, which allows the admission of certified records from the county jail to prove that the prisoner received 90 days of treatment.

### Crime of Force or Violence

■ The MDO law applies only to prisoners serving sentences for the crimes enumerated in section 2962, subdivision (e). (*People v. Butler* (1999) 74 Cal.App.4th 557, 560 [88 Cal.Rptr.2d 210].) Section 2962, subdivision (e)(2)(P) lists as a qualifying offense: "A crime not enumerated in subparagraphs (A) to (O), inclusive, in which the prisoner used force or violence, or caused serious bodily injury as defined in paragraph (4) of subdivision (f) of Section 243." The trial court determined that appellant's violation of Vehicle Code section 2800.2 was a crime of force or violence.

Evidence concerning the underlying offense was presented through the testimony of appellant's treating psychiatrist and the reports of the two doctors who evaluated him for the MDO certification. All three doctors had reviewed the probation report in appellant's underlying case and opined that the crime met the "force or violence" criterion. According to the doctors, the probation report indicated that on March 6, 2003, appellant led police on a high-speed chase in which he drove erratically and almost struck another vehicle before running out of gas and coming to a stop. He was physically combative and struggled with the officers when they arrested him.

Appellant does not dispute that a crime fitting the above description would qualify as one of force or violence. But he argues there was no admissible evidence that his crime actually occurred as the doctors described. Appellant notes that the probation report in the underlying case was hearsay and was not itself admissible, and he claims that the court should not have considered the doctors' testimony to prove the facts of the underlying offense. He contends that absent this testimony, there was no evidence, substantial or otherwise, to support the trial court's finding on the force or violence criterion.

■ We have previously held that a qualified mental health professional may render an opinion on the force or violence criterion and may rely on the probation report from the underlying case in formulating that opinion. (*People v. Valdez, supra*, 89 Cal.App.4th at p. 1017; *People v. Miller* (1994) 25 Cal.App.4th 913, 917–919 [31 Cal.Rptr.2d 423].) Although a probation report is itself hearsay and is not independently admissible, an expert witness may rely on reliable hearsay materials in formulating an opinion. (*People v.*

*Gardeley* (1997) 14 Cal.4th 605, 618–619 [59 Cal.Rptr.2d 356, 927 P.2d 713]; *People v. Campos* (1995) 32 Cal.App.4th 304, 309–310 [38 Cal.Rptr.2d 113].) A probation report is a reliable document "of a type that reasonably may be relied upon by an expert . . ." in assessing a prisoner's MDO status. (Evid. Code, § 801, subd. (b); *Miller,* at pp. 917–918.) The doctors in this case properly relied on the probation report as the basis for their opinions that the crime involved force or violence, and their opinions were substantial evidence that appellant's Vehicle Code section 2800.2 conviction was a qualifying offense. (*Valdez,* at p. 1017.)

Appellant acknowledges that the experts were allowed to base their opinions on hearsay matter such as the probation report, but he argues that they should not have been allowed to testify to the details of the report. He cites *People v. Coleman* (1985) 38 Cal.3d 69 [211 Cal.Rptr. 102, 695 P.2d 189], in which the court found it was prejudicial error to admit several letters written by the dead victim. Although defense experts in *Coleman* had relied upon those letters to formulate an opinion about the defendant's mental state and his relationship with the victim, this did not warrant a recitation of the details of those letters during cross-examination. The court explained, "[W]hile an expert may give reasons on direct examination for his opinions, including the matters he considered in forming them, he may not under the guise of reasons bring before the jury incompetent hearsay evidence. [Citation.] Ordinarily, the use of a limiting instruction that matters on which an expert based his opinion are admitted only to show the basis for the opinion and not for the truth of the matter cures any hearsay problem involved, but in aggravated situations, where hearsay evidence is recited in detail, a limiting instruction may not remedy the problem." (*Id.* at p. 92.)

The court in *Coleman* was attempting to balance the desirability of allowing an expert to explain the basis for an opinion and the need to prevent the *jury* from considering inadmissible matter for an improper purpose. In this case, however, appellant was tried before the court. A judge is presumed to know and follow the law. (See *People v. Coddington* (2000) 23 Cal.4th 529, 644 [97 Cal.Rptr.2d 528, 2 P.3d 1081], overruled on other grounds in *People v. Price* (2001) 25 Cal.4th 1046, 1069, fn. 13 [108 Cal.Rptr.2d 409, 25 P.3d 618].) We must assume that the court in this case considered the testimony about the probation report's contents solely for the proper purpose of assessing the experts' credibility, and not as independent proof of the facts contained therein.

Because we conclude there was no error in allowing the experts to describe the probation report in stating the basis for their opinions on the force or violence criterion, we reject appellant's alternative claim that his trial attorney was ineffective in failing to object to the testimony.

The judgment is affirmed.

Gilbert, P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 22, 2005. Kennard, J., was of the opinion that the petition should be granted.