Filed 4/8/13  P. v. Osman CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>IRSHAD ABDISHEIKU OSMAN,<br><br>     Defendant and Appellant. | H037818<br>(Santa Clara County<br>Super. Ct. No. C1085577) |

Defendant Irshad Abdisheiku Osman appeals from a judgment of conviction entered after he pleaded no contest to lewd and lascivious act on a child under 14 (Pen. Code, § 288, subd. (a))[1] and admitted that he had substantial sexual contact with the child during the commission of this offense (§ 1203.066, subd. (a)(8)).  Pursuant to the negotiated plea agreement, the trial court sentenced him to three years in prison.  On appeal, defendant contends that the trial court abused its discretion in failing to reduce his score on the Static-99R risk assessment form.  He also contends that the trial court's failure to correct the probation report violated his constitutional rights to religious freedom and equal protection.  We find no error and affirm the judgment.

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

## I. Statement of Facts[2]

Thirteen-year-old John Doe testified that defendant began teaching him about the Koran in January 2010 as a favor to his family. Most of the tutoring sessions occurred at John Doe's home, but others occurred at defendant's residence.

At approximately 4:30 p.m. on August 14, 2010, defendant picked up John Doe to take him to the mosque. They left the mosque at about 9:30 p.m. and went to defendant's residence. After John Doe fell asleep on the living room couch, defendant told him to sleep on his bed. John Doe, who was wearing his clothes, then fell asleep on defendant's bed.

John Doe was awakened when his "butt started hurting." The pain in his rectum was seven on a scale of one to 10, with 10 being "really, really bad pain." His pants and underwear had been pulled down below his thighs. Defendant, whose pants were down to his ankles, was behind John Doe. Defendant's penis was erect and had semen on it. John Doe went to the bathroom, cleaned himself, and saw semen on the toilet paper. John Doe then told defendant to take him home.

Defendant drove John Doe to the Safeway parking lot where they both exited the car. As they were walking to John Doe's residence, defendant said he had to go to work and left. John Doe ran home and told family members what had happened. John Doe was interviewed by police officers that night.

## II. Discussion

Defendant contends that the trial court abused its discretion in denying his request to strike the second risk factor on the Static-99R coding form. He contends that this factor irrationally distorted his assessed risk for reoffending and violated his constitutional rights to freedom of religion and equal protection.

---

[2] The statement of facts is based on the transcript of the preliminary hearing.

## A. Background

The probation report included a Static-99R, which assessed 10 risk factors. Defendant received a score of 4. He received one point for each of the following: he would be 18 to 34.9 years old when he was released from prison, he had never "lived with a lover at least for two years," he was not related to the victim, and his victim was male. As to the second factor, the comments section of the form states: "Defendant stated that he is single, and his religion prohibits living with a lover prior to marriage." Defendant did not receive any more points because he did not have any nonsexual violent convictions or prior nonsexual violent convictions, prior sexual convictions, more than three prior sentencing dates, or any victims who were strangers. A score of minus 3 to 1 on the Static-99R indicates a low risk, 2 or 3 indicates a low-moderate risk, 4 or 5 indicates a moderate-high risk, and 6 or more indicates a high risk.[3]

Defendant objected to the use of the Static-99R at the sentencing hearing. His counsel argued that defendant was a very devout follower of Islam and his religion and culture prohibit cohabitation prior to marriage. Trial counsel stated that the information in the comment section was "insufficient to alert the Department of Corrections that there were religious issues involved." He requested that the trial court strike the point for this factor, thus reducing the score by one point.

The prosecutor objected to the motion to strike. He argued that the Static-99R was "religion neutral" and the second risk factor was "qualified" by defendant's explanation in the comments section. He also noted that the Static-99R is "simply a predictor," and "should be given whatever weight it deserves."

The trial court declined to strike the score on the second risk factor. It stated: "With respect to the boxes on the form that Defense Counsel is asking the Court to strike, I am not prepared to do that at this time. I understand the argument made by the Defense

---

[3] The Static-99R is a more recent version of the Static-99 and accounts for age as a mitigating factor. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1341, fn. 4.)

with respect to perhaps the inadequacies of the Static 99[R]. Nonetheless, the law mandates that predictors be checked and filled out, and it appears that the information that was obtained was certainly accurate. [¶] With respect to the 'comments' section, again, I think the comments adequately reflect what the situation was with respect to Mr. Osman having any previous lovers. Again, I will indicate that I do understand that there may be some inadequacies or insufficiencies with the Static 99. Nonetheless, they are the answers as given in the report and will remain."

## B.  Legal Principles

A presentence or probation report provides the trial court with relevant and reliable information regarding sentencing. (See § 1203.) If the defendant has been convicted of an offense that requires him to register as a sex offender, "the probation officer's report shall include the results of the State-Authorized Risk Assessment Tool for Sex Offenders (SARATSO) . . . ." (§ 1203, subd. (b)(2)(C).) The Legislature has required that the State-Authorized Risk Assessment Tool for Sex Offenders (SARATSO) "reflect[] the most reliable, objective, and well-established protocols for predicting sex offender risk of recidivism, that has been scientifically validated and cross validated, and is, or is reasonably likely to be, widely accepted by the courts." (§ 290.04, subd. (a)(2).) The Static-99 has been designated the SARATSO for adult males required to register as sex offenders. (§ 290.04, subd. (b)(1).)

When probation is denied, the report is forwarded to the California Department of Corrections and Rehabilitation (CDCR). (§ 1203, subd. (b)(3).) The probation report is then used by the CDCR for classification and assessment of a defendant's risk on release and his conditions of parole. (Cal. Code Regs., tit. 15, §§ 3076.2. subd. (b)(2)(E), 3375, subd. (j)(3).) The probation report is also used in other contexts. It is admissible evidence to show the underlying facts of a prior conviction, and it may support a "determination that a person is a sexually violent predator, but shall not be the sole basis

for the determination." (Welf. & Inst. Code, § 6600, subd. (a)(3).) The information in probation reports may also be used by experts in forming their opinions regarding a prisoner's conduct in proceedings under the Mentally Disordered Offender Act (§ 2960 et seq.). (*People v. Martin* (2005) 127 Cal.App.4th 970, 976-977, disapproved on another ground in *People v. Achrem* (2013) 213 Cal.App.4th 153.)

### 1.  Factual Findings

Defendant argues that the Static-99R does not take into account religious sensibilities, noting that many religions prohibit cohabitation outside of marriage. Thus, he claims that the trial court abused its discretion "when it [made] factual findings based on an irrational inference."[4]

A trial court abuses its discretion when its factual findings are not supported by substantial evidence. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)

Here, there is no question that the probation report accurately reflects defendant's answer to the second risk factor, that is, that he had never lived with a lover for at least two years. Moreover, the "comments" section of the Static-99R allowed defendant the opportunity to explain his response to this risk factor and to clarify that he was single and his religion prohibited cohabitation. Defendant has not shown that the information explaining his response to the second risk factor will not be used in assessing his risk of reoffense. Since the probation report must include the results of the Static-99R for individuals, such as defendant, who must register as sex offenders, the trial court did not have discretion to strike a risk factor that was factually accurate. (§ 1203, subd. (b)(2)(C).)

---

[4]     Noting that the trial court imposed the mitigated prison term pursuant to the plea agreement, the Attorney General argues that defendant's claim is premature since it will have no effect on his sentence. However, the Static-99R is included in defendant's probation report, which is used by the CDCR for classification and assessment of defendant upon his release from prison. (Cal. Code Regs., tit. 15, §§ 3076.2, subd. (b)(2)(E), 3375, subd. (j)(3).) Thus, we reject this argument.

Relying on *United States v. C.R.* (E.D.N.Y. 2011) 792 F.Supp.2d 343 (*C.R.*), defendant argues that the information "was misleading and led to an inaccurate risk assessment." Defendant's reliance on *C.R.* is misplaced. In *C.R.*, the parties presented expert testimony regarding the minor's potential for recidivism based on various assessments, including the Static-99. (*C.R.*, at pp. 445-460.) Based on this evidence, the trial court concluded that the Static-99 was inapplicable to a minor who was convicted solely of online child pornography. (*C.R.*, at p. 446.) In contrast to *C.R.*, defendant did not present any evidence to support his challenge to the use of the Static-99R.

## 2. Right to Religious Freedom

Defendant next contends that the trial court's failure to correct the report violated his First Amendment right to religious freedom.

Here, trial counsel noted that defendant was "a very devout follower of Islam and was attempting to teach this young man the issues involving the Koran and taking him to the mosques and so forth," and it was very "troubling to think he could go from a low/moderate risk category to moderate to high based on his adherence to a cultural, and more importantly, religious principle."

" ' "[A]s a general rule, 'the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal.' [Citations.] This applies to claims based on statutory violations, as well as claims based on violations of fundamental constitutional rights. [Citations.]" ' [Citation.]" (*People v. Romero* (2008) 44 Cal.4th 386, 411 (*Romero*).) Since defense counsel never argued that the use of the Static-99R violated his constitutional right to religious freedom, he forfeited the issue on appeal.

Even assuming that defendant has preserved this issue on appeal, we find that it has no merit. The First Amendment to the United States Constitution prohibits the "establishment of religion, or prohibiting the free exercise thereof." (U.S. Const., 1st Amend.; see also Cal. Const., art. I, § 4.) In *Lemon v. Kurtzman* (1971) 403 U.S. 602

(*Lemon*), the United States Supreme Court established a three-part test to evaluate a challenge under the Establishment Clause. Under this test, "a governmental practice must (1) reflect a clearly secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive government entanglement with religion. [Citation.]" (*Lee v. Weisman* (1992) 505 U.S. 577, 584-585.)

Here, the Static-99R, including the second risk factor, satisfies the first part of the *Lemon* test. It has the "secular legislative purpose" of identifying a convicted adult sex offender's potential for recidivism. (*Lemon*, *supra*, 403 U.S. at p. 612.) As defendant has acknowledged, studies have shown that the second risk factor is relevant to this purpose, because "a person who has lived with a sexual partner for at least two years is less likely to commit a sexual offense."

As to the second part of the *Lemon* test, the Static-99R has a "primary effect . . . that neither advances nor inhibits religion." (*Lemon*, *supra*, 403 U.S. at p. 612.) It does not refer to religion or religious beliefs, and it does not distinguish between male sex offenders who are married and those who cohabit with a partner. Defendant contends, however, that the second risk factor "impos[es] greater restriction on people because they exercise their religious belief not to cohabitate before marriage," and thus has the effect of inhibiting religion. Though it may be true that a convicted sex offender who does not cohabit for at least two years due to religious beliefs is less likely to reoffend than one who does not do so for non-religious reasons, there may be no such correlation. Since defendant presented no evidence on the effects of a convicted sex offender's religious beliefs and his potential for recidivism, we reject his contention.

As to the third part of the *Lemon* test, the second risk factor of the Static-99R avoids "'excessive government entanglement with religion'" (*Lemon*, *supra*, 403 U.S. at p. 613), since it does not refer to any religion or religious practice.

Defendant's reliance on *Katcoff v. Marsh* (2d Cir. 1985) 755 F.2d 223, 234 is unpersuasive. In *Katcoff*, the plaintiffs challenged the Army's program of providing

chaplains to enable soldiers to practice their religion. (*Id.* at p. 224.) *Katcoff* held that the program, with a few exceptions, was constitutional. (*Ibid.*) Here, defendant has not demonstrated that the Static-99R interfered with his right to practice his religion. *Inouye v. Kemna* (9th Cir. 2007) 504 F.3d 705 also does not support defendant's position. In *Inouye*, the parties agreed that requiring a parolee to participate in a religion-based drug treatment program was unconstitutional. (*Id.* at p. 711.) In the present case, a positive score on the second risk factor does not compel defendant to participate in any religion.

In sum, we conclude that defendant has failed to establish that the second risk factor of the Static-99R violated his First Amendment right to religious freedom.

### 3. Right to Equal Protection

Defendant next contends that the failure to correct the probation report violated his right to equal protection.

Here, defendant failed to object on the ground that the Static-99R violated his right to equal protection. Accordingly, he has forfeited the issue on appeal. (*Romero*, *supra*, 44 Cal.4th at p. 411.)

Assuming that defendant has preserved this issue on appeal, there is no merit to his contention. Both the federal and state Constitutions guarantee the right to equal protection of the laws. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) " ' "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)[5] "The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is

---

[5] Though the Static-99R is not a statute, its use is required by sections 290.04, subdivision (b)(1) and 1203, subdivision (b)(2)(C).

justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714.) Once this prerequisite is met, we then determine the appropriate standard of review. (*Id.* at p. 715.) When a statute involves suspect classifications or touches upon fundamental interests, we apply strict scrutiny review and a statute will be sustained if it is necessary to further a compelling state interest. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200 (*Hofsheier*).) However, "most legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose. [Citations.]" (*Ibid.*)

Defendant contends that "sex offenders who follow their religious teachings and do not cohabitate with others before marriage" are similarly situated to "sex offenders with the same record and profile under the Static-99R but freely live with lovers outside marriage."

Assuming, as does the Attorney General, that the two classes of sex offenders are similarly situated, we next consider whether the distinction infringes upon a fundamental constitutional right. Defendant contends that the state's use of the Static-99R touches upon his fundamental right to religious freedom. We disagree. The second risk factor of the Static-99R distinguishes between the two classes based on cohabitation, not religion. Under the Static-99R, all sex offenders who have not cohabited, regardless of their religious beliefs and practices, receive one point, while those who have cohabited for at least two years receive no points. Since this classification does not infringe a fundamental right, we must determine " " " " *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification*. [Citations.] Where there are "plausible reasons" for [the classification], "our inquiry is at an end." ' " " " (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1200-1201.) As defendant has acknowledged, studies have indicated that cohabitation is a relevant factor, and thus the second risk factor furthers the legitimate state purpose of predicting the potential for recidivism by convicted sex offenders. Since the second risk factor bears a rational basis to the

legitimate state purpose of protecting the public, it does not violate defendant's right to equal protection.

## 4.  Ineffective Assistance of Counsel

Defendant also contends that his trial counsel was ineffective for failing to present appropriate objections to the probation report.

"To prevail on a claim of ineffective assistance of counsel, a defendant ' "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." ' [Citation.] . . .  Moreover, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

Defendant's contention fails.  We have concluded that his constitutional claims have no merit and thus he cannot establish that he was prejudiced by any deficiency in trial counsel's performance.

## III.  Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:




_____
Premo, Acting P. J.




_____
Márquez, J.