Filed 7/11/13  P. v. Collier CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRENT MELTON COLLIER,<br><br>    Defendant and Appellant. | H038124<br>(Santa Clara County<br>Super. Ct. No. 162764) |

Defendant Brent Melton Collier appeals from a trial court order extending his involuntary commitment as a mentally disordered offender (MDO).  He argues the order must be reversed because an expert witness testified regarding the content of inadmissible hearsay documents when opining that defendant was unsuitable for release from Patton State Hospital (Patton).  Defendant alternatively argues the trial court erred in refusing placement in an outpatient treatment program.  We will affirm.

**FACTUAL AND PROCEDURAL HISTORY**

In 1992, defendant threw a rock at a bus driver, causing her bodily injury.  As a result of this incident, he was convicted of violating Penal Code section 245.2[1] and sentenced to four years in prison.

---

[1] Subsequent unspecified statutory references are to the Penal Code.

In 1995, defendant was deemed an MDO and civilly committed. He was released on outpatient status, under the supervision of the South Bay Conditional Release Program (CONREP), in 1997. That same year, he stole a CONREP van, and his outpatient status was revoked. He was accordingly committed to Atascadero State Hospital.

Defendant was administratively transferred to Patton in 1999. Over the next 12 years, the trial court periodically extended defendant's commitment to Patton.

On October 12, 2011, the Santa Clara County District Attorney filed a petition, pursuant to section 2970, seeking to extend defendant's commitment for an additional year. A court trial on the petition commenced on March 20, 2012.

Dr. Gregory Leong provided expert testimony at the trial. Dr. Leong was a Patton psychiatrist, and he interviewed defendant for 45 minutes on August 16, 2011. During the interview, defendant admitted that he experienced delusions and heard voices. He explained that he had suffered from a mental disorder in the past, but he claimed that he no longer suffered from any sort of mental disorder.

During the interview with Dr. Leong, defendant talked about the 1992 assault on the bus driver. Defendant stated that the bus driver, who was female, reminded him of his father. He explained that the bus driver deserved to be assaulted because she had not treated him with adequate respect. Based on defendant's statements, Dr. Leong determined that defendant experienced a delusional misidentification when he committed the assault on the bus driver.

Later in the interview, defendant told Dr. Leong that other people and entities were responsible for all his failings in life. Defendant stated that CONREP was one of the entities that had wronged him. He complained that, when he participated in CONREP in 1997, he was forced to submit to frequent drug testing. He also complained that CONREP prohibited him from having any money. He explained that the conditions

2

imposed by CONREP were unduly restrictive, and that he was therefore justified in fleeing from CONREP.

Near the end of the interview, defendant began speaking about a fellow patient who had been accepted into CONREP. Defendant explained that the patient was a murderer, and that it would therefore be unfair if defendant were not also accepted into CONREP. Defendant explained that he needed to go to CONREP because individuals at Patton were out to get him. He believed he was in danger at Patton. He refused to answer a hypothetical question regarding CONREP, explaining that answering the question would further endanger him. Defendant was upset, and he terminated the interview. Dr. Leong testified that defendant's fearful statements and behavior showed that he was delusional and hearing voices.

Before trial, Dr. Leong reviewed defendant's Patton file. The records in the file showed that defendant had recently experienced illogical thinking, paranoia, irritability, and mood disturbance. Notes made by defendant's treating psychologist stated that defendant's symptoms were in partial remission, but that defendant was still experiencing thought distortion and internal preoccupation that were indicative of delusions or hallucinations. The records showed that defendant had recently experienced a delusion that caused him to believe that Patton staff members were imposters.

Based on his interview with defendant, as well as the symptoms and behaviors documented in defendant's Patton file, Dr. Leong opined at trial that defendant was currently suffering from paranoid schizophrenia. Dr. Leong also opined that defendant would pose a substantial risk of harm to others if released into the community. Dr. Leong believed that defendant posed a substantial risk of harm because defendant was currently exhibiting symptoms of a severe mental illness and defendant's failure to recognize the existence of his mental illness rendered him unlikely to comply with a treatment program.

3

Defendant testified at the trial. He explained that he was currently suffering from paranoid schizophrenia. He testified that his disease caused him to experience "[t]hought disorders, delusions, believing people are out to get you, inferiority complexes, worries about things that aren't real." He explained that he currently experienced delusions involving the devil, hell, and heaven. He currently believed that Patton staff members were out to get him.

Defendant testified that his act of stealing the van and fleeing from CONREP in 1997 was "[n]ot that big of a deal." He explained that his actions were justified because CONREP had violated his constitutional rights. Despite his belief that CONREP had violated his constitutional rights, defendant testified that he would like the court to send him to CONREP if outright release were denied.

At the conclusion of the trial, the court found that defendant suffered from a severe mental disorder that was not in remission, and that defendant would pose a substantial danger of physical harm to others if he were released into the community. The court accordingly granted the petition to extend defendant's involuntary commitment for an additional year. The court denied defendant's request to be placed with CONREP, finding that defendant had failed to satisfy the burden of proof required for an outpatient placement.

On March 29, 2012, defendant filed a timely notice of appeal. This appeal followed.

## DISCUSSION

Defendant argues the order extending his involuntary commitment must be reversed because Dr. Leong testified regarding the content of several inadmissible hearsay documents included in defendant's Patton file. We conclude that Dr. Leong properly relied on the hearsay in forming his opinion regarding defendant's mental disorder and dangerousness, and that Dr. Leong properly testified regarding facts

4

contained in the Patton file at the court trial. We accordingly find no abuse of discretion in the trial court's admission of the hearsay.

In the alternative, defendant argues the trial court's denial of CONREP placement should be reversed because defendant's trial testimony established his suitability for treatment at CONREP. We conclude that defendant's testimony, which evinced a hostility toward CONREP and its policies, constituted substantial evidence that defendant could not be safely and effectively treated at CONREP. We therefore conclude that the trial court did not err in refusing to place defendant with CONREP.

## I. Admission of the Hearsay was Not an Abuse of Discretion

Section 2972, subdivision (c) describes the elements that must be established to extend an MDO's involuntary commitment: "If the court or jury finds that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted . . . ." A qualified expert witness "is entitled to render an opinion on the criteria necessary for an MDO commitment." (*People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569.)

Matter that is ordinarily inadmissible "can form the proper basis for an expert's opinion testimony." (*People v. Gardeley* (1996) 14 Cal.4th 605, 618; see also Evid. Code, § 801, subd. (b) [an expert's opinion may be based on matters known to the expert "whether or not admissible"].) Thus, an expert may generally base his or her opinion on reliable hearsay "not otherwise admissible." (*People v. Montiel* (1993) 5 Cal.4th 877, 918.) "[A]n expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion." (*Gardeley, supra,* 14 Cal.4th at p. 618.)

5

An expert witness's ability to testify regarding inadmissible hearsay, however, is not unlimited. *People v. Coleman* explained: "While an expert may state on direct examination the matters on which he relied in forming his opinion, he may not testify as to the details of such matters if they are otherwise inadmissible." (*People v. Coleman* (1985) 38 Cal.3d 69, 92 (*Coleman*), disapproved on another point in *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32, internal quotation mark removed.) "The rule rests on the rationale that while an expert may give reasons on direct examination for his opinions, including the matters he considered in forming them, he may not under the guise of reasons bring before the jury incompetent hearsay evidence." (*Ibid.*)

A trial court must therefore balance competing interests when determining the extent to which an expert witness may testify regarding hearsay documents. The desirability of permitting an expert to explain the basis for an opinion must be balanced against the need to prevent the trier of fact from considering inadmissible matter for an improper purpose. (See *People v. Martin* (2005) 127 Cal.App.4th 970, 977 (*Martin*), disapproved on another point in *People v. Achrem* (2013) 213 Cal.App.4th 153, 156.) "Because an expert's need to consider extrajudicial matters, and a jury's need for information sufficient to evaluate an expert opinion, may conflict with an accused's interest in avoiding substantive use of unreliable hearsay, disputes in this area must generally be left to the trial court's sound judgment." (*Montiel, supra,* 5 Cal.4th at p. 919.) A trial court's ruling regarding the admissibility of this hearsay is accordingly reviewed for abuse of discretion. (*People v. Valdez* (1997) 58 Cal.App.4th 494, 511; see also *People v. Waidla* (2000) 22 Cal.4th 690, 723 ["an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence"].)

The following principles must guide a reviewing court's abuse of discretion analysis: " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a

6

legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 364, p. 420; see *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.] . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' (*City of Sacramento v. Drew* (1989) 207 Cal. App. 3d 1287, 1297-1298.) To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773).)

*People v. Campos* (1995) 32 Cal.App.4th 304 (*Campos*) found such an abuse of discretion in a trial court's admission of the hearsay basis of an expert's opinion. In *Campos*, a jury determined the appellant qualified as an MDO. (*Id.* at p. 306.) *Campos* held that the trial court erred in permitting a psychiatrist to testify that nontestifying experts concurred in the psychiatrist's opinion regarding the appellant's MDO status. (*Id.* at pp. 306-307.) *Campos* reasoned: "[D]octors can testify as to the basis for their opinion [citation], but this is not intended to be a channel by which testifying doctors can place the opinion of innumerable out-of-court doctors before the jury." (*Id.* at p. 308, internal quotation marks omitted.)

In contrast, *Martin, supra,* 127 Cal.App.4th 970 found no abuse of discretion in the admission of the hearsay basis of expert opinion. In *Martin*, the appellant's MDO

7

status was determined at a court trial. (*Id.* at p. 973.) At the court trial, three doctors testified that specific facts in the probation report established the appellant's status as an MDO. (*Id.* at p. 976.) On appeal, the appellant argued the experts "should not have been allowed to testify to the details of the report." (*Id.* at p. 977.) *Martin* held that "there was no error in allowing the experts to describe the probation report in stating the basis for their opinions." (*Ibid.*) *Martin* reasoned that a probation report is a reliable hearsay document upon which an expert may base an opinion. (*Ibid.*) *Martin* also reasoned that the *Coleman* rule, which proscribes an expert's testimony regarding the details included in hearsay documents, is inapplicable in a court trial. (*Ibid.*) *Martin* explained: "The court in *Coleman* was attempting to balance the desirability of allowing an expert to explain the basis for an opinion and the need to prevent the *jury* from considering inadmissible matter for an improper purpose. In this case, however, appellant was tried before the court. A judge is presumed to know and follow the law. [Citations.] We must assume that the court in this case considered the testimony about the probation report's contents solely for the proper purpose of assessing the experts' credibility, and not as independent proof of the facts contained therein." (*Ibid.*, italics in original.)

At defendant's court trial, Dr. Leong's opinion regarding defendant's mental disorder and unsuitability for release from Patton was based, in part, on medical records in defendant's Patton file. Specifically, Dr. Leong utilized the following hearsay in defendant's Patton file: the treating psychiatrist's diagnosis of paranoid schizophrenia, polysubstance dependence, and water intoxication; the facts of the 1992 assault on the bus driver; defendant's symptoms as described by Patton staff members; Patton staff members' descriptions of defendant's participation in group treatment; Patton staff members' statements regarding the viability of defendant's release plan; notes indicating that defendant's substance abuse problem was in institutional remission; Patton staff

members' statements that defendant denied having a substance abuse problem; and Patton staff members' notes regarding defendant's recent delusions.

Defendant's case is analogous to *Martin*. The medical records in defendant's Patton file, like the probation report at issue in *Martin,* constituted reliable hearsay upon which Dr. Leong was permitted to base his opinion. (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743 ["although hospital records are hearsay, they can be used as a basis for an expert medical opinion"]; see also *People v. Nelson* (2012) 209 Cal.App.4th 698, 707 [mental health experts "routinely rely on interview reports and observations of nontestifying experts"].) Also like *Martin*, defendant's MDO status was determined by the trial court, not by a jury. Thus, just as the *Martin* court did, we must presume that the trial court did not improperly consider the Patton medical records for their truth. (See *Martin, supra,* 127 Cal.App.4th at p. 977.) Indeed, the trial court specifically stated that it considered the hearsay in defendant's Patton file only for the purpose of assessing the credibility of Dr. Leong's opinion. The *Martin* holding therefore authorized Dr. Leong's testimony regarding the content of the hearsay documents in defendant's Patton file. Accordingly, because the admission of the hearsay in defendant's case comports with the legal principles and policies articulated in *Martin*, we find no abuse of discretion.

Defendant contends the *Campos* holding prohibited Dr. Leong from testifying regarding the content of the hearsay documents in the Patton file. *Campos*, however, is easily harmonized with our analysis. *Campos* held that the trial court erred in admitting, in a jury trial, an expert's testimony regarding the medical opinions of multiple nontestifying doctors. (*Campos, supra,* 32 Cal.App.4th at p. 308.) In defendant's case, Dr. Leong described only one nontestifying doctor's opinion: the treating psychiatrist's diagnosis regarding defendant's mental disorder. The remainder of the hearsay utilized by Dr. Leong largely pertained to Patton staff members' direct observations of defendant's behavior, not the personal opinions of those Patton staff members.

9

Moreover, unlike the jury trial in *Campos*, defendant had a court trial. In light of the *Campos* court's concern with placing "the opinion of innumerable out-of-court doctors before the jury," defendant's case does not fall within the ambit of the *Campos* holding. (*Id.* at p. 308, internal quotation marks omitted; see also *People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1326 [*Campos* was "concerned with preventing the introduction of multiple opinions, insulated from cross-examination, into evidence"].)

Accordingly, we conclude that Dr. Leong's testimony regarding the hearsay was authorized under the legal principles and policies articulated in *Martin*. We therefore hold that the trial court did not abuse its discretion in admitting the hearsay.

## II. Substantial Evidence Supports the Trial Court's Denial of CONREP Placement

Defendant alternatively argues the trial court erred in refusing to place him in the CONREP outpatient treatment program. Defendant's contention is unpersuasive.

Section 2972, subdivision (d) states: "A person shall be released on outpatient status if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis." Section 2972, subdivision (d) describes "a disposition available to the trial court at the conclusion of a recommitment hearing." (*People v. May* (2007) 155 Cal.App.4th 350, 359; see also *People v. Rish* (2008) 163 Cal.App.4th 1370, 1382 [section 2972, subdivision (d) "describes an alternative disposition that is available to the court" upon sustaining a section 2970 petition].)

The patient "shoulders the burden of showing his suitability for outpatient treatment." (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 316 (*Gregerson*).) The standard of proof is set forth in the plain language of section 2972, subdivision (d): the patient must demonstrate reasonable cause to believe that he or she can be safely and effectively treated on an outpatient basis. (*Id.* at p. 317.) Under this reasonable cause standard, "the patient must raise a strong suspicion in a person of ordinary prudence that

outpatient treatment would be safe and effective." (*Id.* at p. 319, fn. omitted.)

A trial court's ruling regarding placement in an outpatient program must be based on evidence. (*Gregerson, supra,* 202 Cal.App.4th at p. 320.) "Accordingly, if the court grants outpatient treatment, its order will be affirmed if substantial evidence shows reasonable cause existed to believe outpatient treatment would be safe and effective. If the court denies outpatient treatment, its order will be affirmed if substantial evidence shows there was no such reasonable cause. In any event, if substantial evidence does not support the court's order, it must be reversed." (*Ibid*.)

In the instant case, defendant testified that, during his 1997 CONREP placement, he stole a CONREP van and fled from the CONREP facility. He explained that stealing the van was justified because CONREP's drug-testing procedures and "flea-bitten" facility violated his constitutional rights. He specifically testified that stealing the CONREP van and fleeing from CONREP was "[n]ot that big of a deal." During his August 2011 interview with Dr. Leong, defendant expressed his continuing belief that CONREP had wronged him, and he complained that CONREP's policies were unduly restrictive. At the time of trial, defendant still believed CONREP had violated his constitutional rights.

Given the evidence of defendant's negative feelings toward CONREP and the evidence of his non-compliance with CONREP's policies, the trial court reasonably concluded that defendant could not be safely and effectively treated at CONREP. Although defendant testified that, if placed with CONREP, he would comply with CONREP's policies, this testimony was insufficient to establish reasonable cause for a CONREP placement. (See *Rish, supra,* 163 Cal.App.4th at p. 1385 [patient's testimony regarding his willingness to comply with outpatient procedures was insufficient to establish reasonable cause for an outpatient placement].) Indeed, in light of defendant's testimony regarding his hostility toward CONREP and its policies, defendant's assurance

11

that he would comply with CONREP's policies was suspect. Accordingly, substantial evidence shows there was no reasonable cause to believe that CONREP treatment would be safe and effective, and the trial court did not err in refusing to order CONREP placement. (See generally *ibid.* [patient failed to meet his burden of proof where the "evidence does not come close to addressing how [the patient] intended to comply with outpatient treatment and how such treatment would be safe and effective"].)

## DISPOSITION

The order granting the petition to extend defendant's involuntary commitment is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

ELIA, J.

12