Filed 2/19/15  P. v. K.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>K.C.,<br><br>　　Defendant and Appellant. | E060441<br><br>(Super.Ct.No. FELSS1304873)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

Defendant K.C. is a mentally disordered offender (MDO), who was committed to Patton State Hospital with two MDO-qualifying convictions for felony assault and a diagnosis of paranoid schizophrenia. Defendant's sole contention on appeal is that the trial court's MDO commitment order was not supported by substantial evidence because the mental health testimony in this case was insufficient proof that she was treated for at least 90 days in the year before her parole date.

Defendant forfeited her claim by not raising it below. (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1245, 1247-1247 [Fourth Dist., Div. Two].) Additionally, defendant's argument lacks merit. After resolving all conflicts in favor of the judgment, substantial evidence supports the jury's finding that defendant was treated for at least 90 days—and probably most of the year—before being paroled. We affirm.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The MDO Offenses*

Defendant was born in December 1985. In 2006, defendant entered the house of her neighbor and friend, G.F., and burst into her bedroom wielding a serrated steak knife. Defendant raised the knife over her shoulder and screamed G.F.'s name as she lunged toward her and her boyfriend. G.F. felt that her life had been threatened by defendant and she would have been stabbed if her boyfriend had not intervened and wrestled the

2

knife out of defendant's hand.  Defendant made a series of delusional statements to the detective.  Defendant pleaded guilty to assault by means likely to produce great bodily injury.  (§ 245, subd. (a)(l)).)[1]  The conviction also qualified as a serious felony as defined in section 1192.7, subdivision (c)(23), because defendant personally used a dangerous or deadly weapon.

In 2010, after serving time for the 2006 conviction, defendant threatened her mother while brandishing a nine-inch-long steak knife.  When asked whether she realized that she could have stabbed her mother, defendant responded, "I don't care.  I want the fucking whore to die and burn in hell."  Defendant again pleaded guilty to assault by means likely to produce great bodily injury in violation of section 245, subdivision (a)(l), and was sentenced to four years in prison.

During the commission of both crimes, defendant was not taking her medications for schizophrenia.  Her "agitation, irritability, and irrational behavior" were consistent with someone experiencing a psychotic or schizophrenic episode.

## B.  *Defendant's Incarceration*

While incarcerated, defendant "remained grossly psychotic for the duration of her [sentence]" and, thus, was included in the Mental Health Services Delivery System (MHSDS) program.  Defendant was treated at different levels of care—the Correctional Clinical Case Management System (CCCMS), Psychiatric Inpatient Program (PIP), and

---

[1] All statutory citations are to the Penal Code unless stated otherwise.

Enhanced Outpatient Program (EOP) levels—and was admitted multiple times to Patton State Hospital. The mental health services ranged from group therapy provided to general population patients to treatment in high-security, locked facilities for severely impaired patients.

Throughout her incarceration, the mental health experts consistently diagnosed defendant with paranoid schizophrenia and concluded that her mental illness was not in remission. She violated prison rules by engaging in acts of hostility and violence towards staff members, including battery on a police officer and an attempt to kick her escorting officer. Because she presented a substantial danger of physical harm to others, she had to be put into physical restraints on multiple occasions. She maintained the delusional belief that staff members had "cut off [her] liver and kidneys" and were plotting against her.

On August 29, 2013, before her scheduled parole date of September 20, 2013, the Board of Parole Hearings (BPH) certified that defendant was an MDO pursuant to section 2962. Defendant filed a petition to appeal the parole board's finding. (§ 2966.)

C. The MDO Trial

In the year before her parole date of September 20, 2013, defendant was continuously treated for paranoid schizophrenia. During the trial, Dr. Peter Hu, a supervising staff psychiatrist, testified that his duties include monitoring the treatment of women prisoners. He determined that defendant had received 90 days of treatment in the year before her parole date based on his review of the "mental health tracking system

4

software." He further testified that defendant was "consistently offered psychiatric treatment, including individual counseling, psychiatric physicians appointments to monitor her medication management, as well as group therapy" from "October 1st, 2012, until September 30th of 2013."

Other evidence corroborated Dr. Hu's statements. During the 12 months before her scheduled parole, defendant's treatment for schizophrenia included—but was not limited to—medical examination by Dr. Chadwick Burgdorff on November 28 and December 4 and 12, 2012, January 2 and 22, 2013, February 6 and 27, 2013, and March 18, 2013. On March 13 and May 2, 2013, defendant received psychiatric treatment through PIP.[2] She was also treated by an EOP clinician on January 30, February 5, 7, 21, and 26, and March 6 and March 20. Overall, the record of defendant's appointments in the record indicates that she received some form of psychiatric treatment on about 252 separate dates between October 1, 2012, and September 18, 2013.

Dr. Sean Sterling, a forensic psychologist, conducted an assessment of defendant on July 31, 2013, and concluded that she was an MDO, determining that she "has a long history, going back to about age twenty, of having symptoms of a severe mental illness, including delusional beliefs that people are against her, after her, trying to hurt her, hearing voices and being disorganized in her behavior." Sterling found defendant consistently experienced "persecutory delusions, hallucinations, disorganized speech,

---

[2] The record in this case does not make clear when her PIP care ended, if ever.

5

agitation, [and] irritability."  Defendant had been treated for at least 90 days when Sterling made his assessment in July 2013.

Dr. Jinae Su, a psychiatrist, testified that she evaluated defendant for mental illness and prescribed her medication on September 20, 2013, the date defendant was admitted to Patton State Hospital.  Defendant suffers from paranoid schizophrenia, a psychotic illness typically accompanied by symptoms including hallucinations, delusions, paranoid ideations, and incoherent or disorganized speech.  Defendant's psychiatric problems began when she started using methamphetamine at the age of nine years old.

A jury found that defendant was an MDO, within the meaning of sections 2962 and 2966.  The trial court ordered her committed to a state hospital.

III

EVDIENCE OF TREATMENT FOR 90 DAYS

*A.  Application of the MDO Act*

The Mentally Disordered Offender Act (MDO Act) (§ 2960 et seq.) "requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in remission."  (*People v. Harrison* (2013) 57 Cal.4th 1211, 1218.)  The underlying goal of the MDO Act is to protect the public from offenders whose "severe mental disorder . . . was one of the causes of, or was an aggravating factor" in their criminal behavior.  (§ 2960.)  The MDO Act aims ""to protect society by

6

providing both a means for isolating these offenders and treatment for the underlying cause of their criminality.""'" (*People v. Allen* (2007) 42 Cal.4th 91, 97.)

Section 2962 governs the first stage of commitment where treatment is a condition of parole: "The initial MDO commitment is triggered by a certification by a chief psychiatrist of the Department of Corrections and Rehabilitation that the prisoner has a severe mental disorder, that the disorder is not in remission or cannot be kept in remission without treatment, that the disorder was a cause of or an aggravating factor in an enumerated crime for which the prisoner was sentenced to prison, that the prisoner has been in treatment for the disorder for 90 days or more in the year preceding release on parole, and that the prisoner represents a substantial danger of physical harm to others because of the disorder. (§ 2962, subd. (d)(1).)" (*People v. Harrison, supra,* 57 Cal.4th at p. 1218.) Another subdivision provides the prisoner must have "been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release." (§ 2962, subd. (c).)

When a qualified expert is entitled to render an opinion on the criteria necessary for an MDO commitment, he or she may base an opinion on inadmissible hearsay if the information is reliable and of the type reasonably relied upon by experts on the subject. (Evid. Code, § 801, subds. (a) and (b); *People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569.) Additionally, because Evidence Code section 802 permits an expert witness to "state on direct examination the reasons for his opinion and the matter . . . upon which it is based," a testifying expert witness whose opinion is based on ordinarily inadmissible

7

evidence can describe the material that forms the basis of the opinion. (*People v. Gardeley* (1996) 14 Cal.4th 605, 618; *People v. Cooper* (2007) 148 Cal.App.4th 731, 747.)

If a prisoner disagrees with the initial MDO determination, she may file a petition with the superior court. (§ 2966, subd. (b).) The substantial evidence standard for MDO proceedings is identical to that used in criminal appeals. (*People v. Miller* (1994) 25 Cal.App.4th 913, 919-920, disapproved on another point in *People v. Harrison, supra,* 57 Cal.4th at p. 1230.) An appellate court reviews a finding on a criterion for commitment under the MDO law for substantial evidence, drawing all reasonable inferences, and resolving all conflicts, in favor of the judgment. (*People v. Martin* (2005) 127 Cal.App.4th 970, 975, disapproved of on other grounds by *People v. Achrem* (2013) 213 Cal.App.4th 153, 155.) The trier of fact is exclusively vested with the power to assess witness credibility and the truthfulness of facts presented; the reviewing court must accord the jury's finding due deference and refrain from reweighing the evidence and substituting its own evaluation for that of the fact finder. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082-1083.) The testimony of a single mental health professional is sufficient to support a trial court's finding. (*People v. Bowers* (2006) 145 Cal.App.4th 870, 879.)

Defendant only appeals the jury's finding that defendant "has been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release." (§ 2962, subds. (c) and (d)(1).) Defendant has thus conceded

8

sufficient evidence supports all the other substantive factual determinations required by section 2962. Defendant contends that the trial court's MDO commitment order is not supported by substantial evidence because there was insufficient proof that she was treated for her severe mental disorder for at least 90 days in the year before being paroled. However, multiple sources of evidence support the jury's finding that defendant was treated for more than 90 days in the year before being paroled.

## B. Forfeiture

Defendant contends the evidence about the duration of her mental health treatment should have been excluded as inadmissible hearsay because it failed to meet the requirements for admission under Evidence Code section 801. However, defendant did not make an express, specific, and timely objection at trial to the admission of the evidence about her treatment.

The failure to object to the admission of hearsay evidence at trial forfeits an appellate claim that such evidence was improperly admitted. (*People v. Eubanks* (2011) 53 Cal.4th 110, 142; *People v. Mattson* (1990) 50 Cal.3d 826, 854; *People v. Davis* (2008) 168 Cal.App.4th 617, 627; Evid. Code, § 353, subd. (a).) We cannot consider claims that could have been raised below but were not. (*People v. Williams* (1997) 16 Cal.4th 153, 250.) Defendant's current challenges to the admission of this testimony were therefore plainly forfeited.

To the extent that defendant is arguing that any admission of evidence violated her due process rights or her Sixth Amendment right to confront witnesses, defendant's

9

failure to object on any of these grounds also results in her claims being forfeited. (*People v. Riccardi* (2012) 54 Cal.4th 758, 827, fn. 33; *People v. Tafoya* (2007) 42 Cal.4th 147, 166; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1028 & fn. 19; *People v. Boyette* (2002) 29 Cal.4th 381, 424.)

## C. Sufficiency of Evidence

In this case, resolving all conflicts in favor of the judgment, sufficient evidence supports the jury's finding that defendant was treated for at least 90 days in the year before being paroled. Section 2962 does not require 90 days of "continuous" treatment, only 90 days of treatment within a 12-month period. (§ 2962, subds. (c) and (d)(1).)

By itself, the testimony of Dr. Hu is sufficient to support the jury's finding. Hu testified that defendant received no fewer than 90 days of treatment within the year before her parole date between September 2012 and 2013. Hu further testified defendant was consistently offered psychiatric treatment from October 2012 until September 2013. The medical records showed defendant was treated for about 252 days.

Other evidence shows defendant was treated for 111 days between November 28, 2012, and March 18, 2013, and additionally on March 13 and May 2, 2013. Adding these dates together, over 112 days of psychiatric treatment were received by defendant between November 2012 and May 2013. Other treatment occurred on June 29, 2013, and September 20, 2013. A nursing assessment, conducted on September 20, 2013, concluded that defendant "has been in treatment for 90 days or more in the past year." The spreadsheet documenting defendant's mental health treatment shows defendant

10

received at least 252 days of treatment from October 1, 2012, until September 18, 2013, before her parole release date of September 20, 2013. Given the severity of defendant's mental illness, it was unlikely she was not being treated at any time during her incarceration.

Defendant incorrectly argues that only certified prison records could have fulfilled the 90-day requirement and that "Dr. Hu's printout is not an official record . . . covered by Penal Code§ 2981." Section 2981 only states: "For the purpose of proving the fact that a prisoner has received 90 days or more of treatment within the year prior to the prisoner's parole or release, the records or copies of records of any state penitentiary, county jail, federal penitentiary, or state hospital in which that person has been confined, when the records or copies thereof have been certified by the official custodian of those records, may be admitted as evidence." (§ 2981.) The statute allows certified records but it does not require them. (*People v. Martin, supra*, 127 Cal.App.4th at p. 976.) Nor does the statute limit alternative methods of proof. The *Martin* court held that the evidence pertaining to the 90-day treatment, which contained no certified records, was nonetheless "legally sufficient." (*Ibid.*)

Defendant argues this court should follow its decision in *People v. Baker, supra,* 204 Cal.App.4th at page 1247, in which this court held that the issue had not been preserved for appeal. Even if the issue was not also forfeited here, *Baker* does not apply in this case because there was significant testimony from those who personally treated defendant, as well as multiple documents offered into evidence that either do not

11

constitute hearsay or are subject to the hearsay exception for official records: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any . . . criminal proceeding to prove the act, condition, or event if . . . : [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1280.) Furthermore, an expert may testify that a prisoner received 90 or more days of treatment by interpreting her medical records. A medical expert's basic interpretation of such "reliable" records would "assist" the trier of fact in making its determination. (Evid. Code, § 801, subd. (a).)

Defendant never suggested—or offered evidence—below that defendant received fewer than 90 days of treatment. At trial, defendant made no objections to the introduction of the prosecution's evidence. The standard of review requires this court to draw all reasonable inferences and resolve all conflicts in favor of the jury's MDO determination. When considering the evidence in the light most favorable to the People, a rational trier of fact in this case certainly could have found that defendant was treated for her paranoid schizophrenia for 90 days or more in the year between September 2012 and September 2013 before her parole release date. As such, sufficient evidence supported the jury's determination that defendant was in treatment for her severe mental disorder for no fewer than 90 days before scheduled release.

IV

DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

KING

Acting P. J.

MILLER

J.

13