[No. B178643. Second Dist., Div. Six. Nov. 15, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
SHAWN DODD, Defendant and Appellant.

---

**COUNSEL**

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**PERREN, J.**—Shawn Dodd appeals from the order committing him to the Department of Mental Health (DMH) for treatment as a mentally disordered offender (MDO). (Pen. Code, § 2960 et seq.)[1] He contends that there was insufficient evidence that he suffered from the severe mental disorder of pedophilia. We agree and reverse.

## FACTS

In 1998, Dodd was convicted of committing a lewd and lascivious act with a child under the age of 14 and sentenced to state prison. (§ 288, subd. (a).) He filed a petition challenging the August 2004 determination by the Board of Prison Terms (BPT) that he qualified as an MDO.

Dodd's treating psychiatrist William Lykes testified at trial, and written reports by psychologists Gilbert Foss, Philip Trompetter, Amy Phenix, Dawn Starr, Charles Taylor, and Robert E. Record were considered by the trial court. Psychiatrist Hannah MacGregor testified as a witness for Dodd.

Doctors Lykes, Foss, Starr, and Record all concluded that Dodd satisfied all statutory criteria for commitment as an MDO. They opined that Dodd suffered from the severe mental disorder of pedophilia, pedophilia was a cause or aggravating factor in the molestation offense, he was not in remission, he represented a substantial danger of physical harm to others, and

---

[1] All statutory references are to the Penal Code unless otherwise stated.

he had received 90 days of treatment for pedophilia during the year prior to his scheduled parole date. (§ 2962, subds. (a)–(d).)

Doctor Lykes testified that Dodd suffered from pedophilia based on the underlying molestation offense that occurred in May 1998, a 1990 conviction for unlawful sexual intercourse, and information in a report by a parole agent that Dodd molested a seven-year-old girl in April 1998. In the underlying offense, Dodd touched the genital area of a five-year-old child with his groin while the child was taking a bath. The 1990 offense involved a sexual relationship between Dodd and a 13- or 14-year-old girl who became impregnated and bore his child when she was 14.

The only information regarding the molestation of the seven-year-old girl in April 1998 was contained in a June 2, 1998, report by a parole agent to the BPT regarding revocation of Dodd's parole (June 1998 parole report) while he was on parole for another offense. The June 1998 parole report states that "[i]t should be noted that on 4/17/98, it was reported that Dodd was responsible for molesting a seven year old girl in Modesto, California. This prior case is strikingly similar to the present case [May 1998 underlying offense], which involved Dodd allegedly molesting the child of his girl-friend. . . ."

Doctors Starr and Record also based their diagnoses of pedophilia on these three events. Doctor Foss based his diagnosis on the underlying offense and the information in the June 1998 parole report regarding the April 1998 incident.

Doctor Phenix diagnosed Dodd as suffering from schizoaffective disorder, and Doctor Trompetter diagnosed major depression with psychotic features, but both Doctors Phenix and Trompetter concluded that there was insufficient documentation to support a diagnosis of pedophilia. Doctor Taylor concluded that Dodd was suffering from schizoaffective disorder and had "pedophilic traits."

Doctor MacGregor testified that Dodd did not suffer from pedophilia because the only documented incident that would support such a diagnosis was the underlying offense. She concluded that the 1990 offense did not show pedophilia because it involved consensual sexual intercourse with a girl who was in puberty, and she did not consider the April 1998 incident because it was not sufficiently documented to be considered in a diagnosis.

Doctor Lykes testified that Dodd received the required 90 days of treatment through his participation in a sex offender treatment program provided by the parole outpatient clinic while he was on parole between October 4, 2003, and

January 7, 2004, a 95-day period. In his written report, Doctor Foss said the same thing. In her report, Doctor Starr concluded that he had received 90 days of treatment for pedophilia in the Department of Corrections as well as in the parole outpatient clinic. Doctor Record concluded that Dodd had been in "psychiatric treatment with medication and counseling over the past 90 days." Doctor MacGregor also testified that the California Department of Corrections (CDC) ordered Dodd to participate in "parole outpatient treatment" for sex offenders.

The trial court found that all the statutory criteria for an MDO commitment had been proven. The court acknowledged that the experts disagreed on the diagnosis of pedophilia but concluded that the testimony of Dodd's treating psychiatrist, Doctor Lykes, was persuasive. The court found that sexual intercourse with a 13- or 14-year-old girl did not support a diagnosis of pedophilia, but that the May 1998 underlying offense and the April 1998 molestation mentioned in the June 1998 parole report were sufficient. The court stated that "if it's reasonable to conclude that the [April 1998 incident] occurred, then I think the diagnosis of pedophilia is supportable." The court ruled that the April 1998 incident "occurred," and found that "pedophilia is a reasonable diagnosis based upon" the underlying offense and the April 1998 incident.

## DISCUSSION

### *No Substantial Evidence Supports Finding of Pedophilia*

■ A diagnosis of pedophilia requires a person to have "recurrent, intense sexually arousing fantasies, sexual urges or behaviors involving sexual activity with a prepubescent child" for a period of at least six months. (American Psychiatric Assn. Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) Pedophilia, § 302.2, p. 529; see also *People v. Starr* (2003) 106 Cal.App.4th 1202, 1205 [131 Cal.Rptr.2d 616].) In making their diagnoses, experts Lykes, Foss, Starr, and Record all relied on the June 1998 parole report that Dodd molested a young girl in April 1998, and considered this incident as essential to their diagnoses. In addition, the trial court found no other factual basis to conclude that Dodd had *recurrent* sexual fantasies or behavior directed at young children.

■ Dodd contends that the reference in the June 1998 parole report to Dodd's molestation of a young girl in April 1998 was unreliable hearsay, and that the trial court abused its discretion in ruling that the experts could consider that incident in forming their opinions. (*People v. Wells* (2004) 118 Cal.App.4th 179, 186 [12 Cal.Rptr.3d 762] [a trial court's admission of expert testimony is reviewed for abuse of discretion].) We agree. Even if other

portions of the June 1998 parole report had strong indicia of reliability, its brief and conjectural reference to the April 1998 incident fails to establish the occurrence of the incident with sufficient reliability to be considered by the experts in forming their opinions. We conclude that, without consideration of the April 1998 incident, there was no substantial evidence to support the finding that he suffered from pedophilia. (See *People v. Martin* (2005) 127 Cal.App.4th 970, 975 [26 Cal.Rptr.3d 174].)

■ A qualified expert is entitled to render an opinion on the criteria necessary for an MDO commitment, and may base that opinion on information that is itself inadmissible hearsay if the information is reliable and of the type reasonably relied upon by experts on the subject. (*People v. Gardeley* (1996) 14 Cal.4th 605, 618 [59 Cal.Rptr.2d 356, 927 P.2d 713]; *People v. Miller* (1994) 25 Cal.App.4th 913, 918 [31 Cal.Rptr.2d 423]; see Evid. Code, § 801.) A trial court, however, may not admit an expert opinion based on information furnished by others that is speculative, conjectural, or otherwise fails to meet a threshold requirement of reliability. (See *People v. Morris* (1988) 46 Cal.3d 1, 21 [249 Cal.Rptr. 119, 756 P.2d 843], disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543–544, fn. 5 [37 Cal.Rptr.2d 446, 887 P.2d 527]; *People v. Sundlee* (1977) 70 Cal.App.3d 477, 484–485 [138 Cal.Rptr. 834].) As our Supreme Court has stated, "any material that forms the basis of an expert's opinion testimony must be reliable. [Citation.] For 'the law does not accord to the expert's opinion the same degree of credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' " (*People v. Gardeley, supra,* at p. 618.)

■ The June 1998 parole report, entitled "Charge Sheet/Revocation Tracking/Scheduling Request," was prepared to assist the BPT in deciding whether to commence parole revocation proceedings. A parole agent is required to investigate a parolee suspected of a parole violation, document all available facts relating to the charged violation, and prepare a "Parole Violation Report" specifying the charges against a parolee, and containing the information known to the parole agent relevant to the charges. (Cal. Code Regs., tit. 15, §§ 2617, 2618.)

The principal subject of the June 1998 parole report is the May 1998 underlying offense. The report recommends the scheduling of parole revocation proceedings based on three violations or "charges" that arose from the May 1998 offense that qualified Dodd for an MDO commitment.[2] The report recites the details of that offense based on interviews with the investigating police officers, a police report, and the parole agent's personal investigation

---

[2] The charges were absconding from parole supervision, violation of a special condition of parole, and the commission of the underlying May 1998 offense.

and participation in Dodd's arrest. The report concludes that "[d]ue to the obvious seriousness of Dodd's recent arrest, this matter is being referred to the Board of Prison Terms."

Dodd does not challenge reliance by the experts on the portion of the June 1998 parole report covering the May 1998 offense. But the detailed content of that portion of the report stands in stark contrast to its section concerning the April 1998 incident which states: "It should be noted that on 4/17/98, it was reported that Dodd was responsible for molesting a seven year old girl in Modesto, California. This prior case is strikingly similar to the present case, which involved Dodd allegedly molesting the child of his girlfriend. The circumstances surrounding both cases are very similar." There is no other reference to the incident in the June 1998 parole report, and the incident is not designated as a parole violation charge. Also, although the parole agent asserted that the April 1998 incident was strikingly similar to the qualifying offense, there is no indication that his comment was based on facts other than the age of the purported victims and the closeness in time of the two incidents.

The June 1998 parole report does not identify the source of the information regarding the April 1998 incident, and nothing in the report or the record as a whole indicates that the parole agent obtained the information from police officers, witnesses, the victim and her family, arrest or crime reports, his own investigation, or any other source which could be deemed reliable. An expert opinion cannot reasonably be based on nonspecific and conclusory hearsay that does not set forth any factual details of an act necessary for the opinion. (See *In re Jose T.* (1991) 230 Cal.App.3d 1455, 1462 [282 Cal.Rptr. 75]; *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1003 [279 Cal.Rptr. 236].)

In addition, there is nothing in the June 1998 parole report indicating that the parole agent who wrote the report considered the report of the April 1998 incident to have sufficient reliability to establish the occurrence of the molestation without further investigation. The agent did not include the April 1998 incident as a parole revocation charge, and there is no evidence that the BPT treated the incident as a basis for revocation of Dodd's parole, or that criminal charges were ever filed concerning the incident.

We also reject respondent's assumption that the entirety of the June 1998 parole report is reliable because a parole agent's report is the equivalent of a probation report. Unlike a probation report, the June 1998 parole report, at least as to the April 1998 incident, does not describe the factual circumstances of the criminal offense, the defendant's prior record, statements by the defendant to the probation officer, and information concerning the victim of a crime. (See § 1203, subd. (b)(1); Cal. Rules of Court, rule 4.411.5(a).) As we

have previously held, a probation report is generally a reliable document regarding the formulation of an expert opinion on MDO criteria because a probation report is required in every felony proceeding, is typically relied on by the court in imposing sentence, and is subject to challenge by defendants both at sentencing and in a later MDO proceeding. (*People v. Miller, supra,* 25 Cal.App.4th at p. 918; see also *People v. Martin, supra,* 127 Cal.App.4th at pp. 976–977.) The record in the instant case, however, fails to demonstrate that the June 1998 parole report satisfied any of these or comparable criteria.[3]

The judgment (commitment order) is reversed.

Gilbert, P. J., and Coffee, J., concurred.

---

[3] Because the matter may be retried in the People's discretion, we need not and do not consider Dodd's contentions that he did not receive 90 days of treatment for pedophilia within the year prior to his parole release date, that pedophilia does not fall within the purview of the MDO law because it is untreatable, and that classifying pedophiles with MDO's whose disorders can be treated violates the equal protection clauses of the federal and state Constitutions.