Filed 6/20/13  P. v. Tate CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>ANTONIAL TATE,<br><br>   Defendant and Appellant. | 2d Crim. No. B246319<br>(Super. Ct. No. F481951)<br>(San Luis Obispo County) |

Antonial Tate appeals a judgment committing him to the California Department of State Hospitals (CDSH) for treatment as a mentally disordered offender (MDO) (Pen. Code, § 2962) following his commitment offense for forcible rape.  We conclude, among other things, that substantial evidence supports the trial court's finding that Tate's mental disorder was a cause or an aggravating factor in his commitment offense.  We affirm.

FACTS

Tate filed a petition to challenge a Board of Parole Hearings determination that he met the requirements for commitment as an MDO.  (Pen. Code, § 2962.)  He waived his right to a jury trial and the court appointed counsel to represent him.

At trial, Joseph Moreno, a psychologist, testified that Tate suffers from a "schizoaffective disorder" - a severe mental disorder.  Tate has a history of "psychotic symptoms, auditory and visual hallucinations, paranoid and grandiose delusions."  He has

"mood disorder symptoms such as depression and mania." Tate had been in treatment for his disorder for 90 days or more within the year prior to his "parole or release date." His symptoms are not in remission because, as of August 2012, he "was delusional, paranoid and hallucinating."

Tate's commitment offense for forcible rape was committed in 2000. Tate was convicted in 2010. Moreno testified that his "mental disorder was at least an associated if not causal factor in the crime." Tate "represents a substantial danger of physical harm to others." He believes rape is acceptable conduct.

Brandi Mathews, a psychologist at Atascadero State Hospital, testified that as of July 31, 2000, while in custody, Tate was "clearly symptomatic of a severe mental disorder." She said, "it was quite evident he was psychotic." But there was no indication of "bizarre behavior" or "delusional statements" at the time he committed the rape. The crime was "quite goal-directed and suggests criminal behavior as far as him entering through the window; raping; . . . unplugging the phone first, which shows some organization," and covering the victim's face so she could not identify him. On redirect examination, Mathews testified there were no remarks in the police report that Tate made delusional comments during the crime, but "[i]t's possible" that he had "been under the delusion" that he had "some relationship" with the rape victim.

The trial court noted there was a conflict between Moreno and Mathews on whether Tate's mental disorder was a cause or an aggravating factor in the rape. It rejected Mathews' testimony on that issue and found all the elements for an MDO commitment were established.

## DISCUSSION

### *Substantial Evidence*

Tate contends there was insufficient evidence to support the trial court's finding that his mental disorder "caused or aggravated his offense." We disagree.

In reviewing the sufficiency of the evidence, "[w]e consider the entire record in the light most favorable to the judgment and must affirm if there is any substantial evidence supporting the [trial court's] finding." (*People v. Valdez* (2001) 89 Cal.App.4th

2

1013, 1016.) We do not weigh the evidence. Nor do we decide the credibility of the witnesses as that is a matter for the trier of fact. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

"An MDO commitment requires a finding that the defendant suffers from a severe mental disorder that was a cause of or an aggravating factor in the underlying crime." (*People v. Valdez, supra*, 89 Cal.App.4th at p. 1017.) "A qualified expert is entitled to render an opinion on the criteria necessary for an MDO commitment . . . ." (*People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569.)

Moreno testified that Tate's mental disorder was "at least an associated if not causal factor in the crime." Tate argues that this testimony was based on speculation. But Moreno supported his opinion by citing several factors including that: 1) Tate made "odd comments at the time of his arrest about a baby"; 2) he made strange remarks "about being forgiven for all his sins"; 3) he exhibited "odd behavior" as he was "crying, drooling, and catatonic to the point" where he had to be carried to his cell; 4) "[a]fter the offense, he was . . . declared incompetent to stand trial and remanded to Atascadero for restoration"; 5) while incarcerated, "he was frequently cited for indecent exposure or openly masturbating in front of staff"; and 6) he has a pattern of believing "it's acceptable for him to engage in these . . . types of misconduct." In addition, Moreno said, "[Tate] was not receiving treatment at the time of the offense, and recent history shows that when not receiving treatment at the hospital, he decompensated and, in fact, required a court order for involuntary medication."

Moreno said Tate's sexual misconduct is part of "his pattern of behavior over time" and his belief that it is proper to commit these sexually inappropriate acts. He said Tate has a "history of violence as a juvenile" and "when talking about rape," he "makes comments to suggest that he thinks that . . . is acceptable conduct." Tate had such "poor insight" that "he denied that he ever committed a crime." He expressed no "remorse" and had no "empathy for his victim." Moreno said Tate has "an attitudinal system that essentially explains why he engages in this conduct." Tate told a doctor that "the Bible said that rape was acceptable and that if a woman was abstinent or not having sex, it was up to him to set them straight."

3

Tate claims the trial court should have rejected Moreno's testimony. He contends the court should have adopted Mathews' opinion that his mental disorder was not a cause or an aggravating factor in his commitment offense. But the trial court expressly found that Mathews was not credible on this issue. We do not decide the credibility of the witnesses. That is a matter exclusively for the trier of fact. (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.) The court also could reasonably find that Mathews' analysis which focused exclusively on some facts about the commitment offense was incomplete.

By contrast, the trial court could view Moreno's opinion to be based on more comprehensive factors including Tate's psychotic condition at the time of his arrest, the finding that he was not competent to stand trial, his medical history, his pattern of conduct, and his statements which constitute evidence of his disorder and explain why he committed the crime. (*People v. Campos* (1995) 32 Cal.App.4th 304, 307-308 [expert may rely on patient's statements in rendering opinions on MDO requirements].) We "'must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Moreover, Mathews' testimony was not completely in conflict with Moreno. She said "it's possible" Tate could have been delusional at the time of the offense. She also testified that three months after committing the offense, Tate was so "psychotic" that an evaluator could not even complete an interview with him. The evidence is sufficient.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

4

Barry T. LaBarbera, Judge

Superior Court County of San Luis Obispo

_____

Gerald Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.