Filed 5/21/15  P. v. Castro CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>RALPH CASTRO,<br><br>  Defendant and Appellant. | 2d Crim. No. B259396<br>(Super. Ct. No. 14PT00438)<br>(San Luis Obispo County) |

Ralph Castro appeals from the judgment entered after the trial court determined that he was a mentally disordered offender (MDO; Pen. Code, § 2962.)[1] Appellant suffers from exhibitionism, a sexual disorder similar to paraphilia, and contends that the evidence does not support the finding that he is an MDO.  We affirm.

*Procedural History*

Doctor Timothy Nastasi, a psychologist at Atascadero State Hospital, interviewed appellant and appellant's treatment team, reviewed appellant's medical

---

[1] All statutory references are to the Penal Code.  The six criteria for an MDO commitment are:  the prisoner (1) has a severe mental disorder;  (2) used force or violence in committing the underlying offense; (3) had a mental disorder that caused or was an aggravating factor in the commission of the underlying offense; (4) the disorder is not in remission or capable of being kept in remission without treatment; (5) the prisoner was treated for the disorder for at least 90 days in the year prior to his parole or release; and (6) the prisoner poses a serious threat of physical harm to others by reason of the disorder. (§ 2962, subd. (d)(1);  *People v. Clark* (2000) 82 Cal.App.4th 1072, 1075-1076.)

records and four mental health evaluations, and testified that appellant meets all the MDO criteria. Appellant suffers from exhibitionist disorder, a severe mental disorder similar to pedophilia in which appellant displays his genitals to unsuspecting victims. Since 1984, appellant suffered 10 convictions for indecent exposure, four California Department of Corrections and Rehabilitation (CDCR) rule violations for indecent exposure, and 14 adjudicated cases for exposing his genitals.

Appellant's 2004 commitment offenses (indecent exposure and resisting arrest) is based on an incident in which appellant took his penis out of his pants and masturbated as two teenage girls walked past. The girls tried to ignore appellant and quickly walked away. Appellant grabbed the girls' buttocks and stroked his penis, then followed the girls to a gas station where they called the police. When police officers attempted to place appellant in custody, appellant threatened to kill the officers and their families.

Doctor Nastasi opined that the severe mental disorder was a cause or aggravating factor in the commitment offenses and that appellant was not in remission. Like other paraphilia disorders, exhibitionistic disorders do not spontaneously go into remission. Doctor Nastasi explained: "The nature of the disorder is fantasies, desires and intense sexual arousal from exposing himself. We [w]on't know if it's under control . . . until . . . [appellant] completes a [treatment] program . . . or . . . gets out and . . . expose[s himself] to the unsuspecting targets."

Doctor Nastasi opined appellant represented a substantial danger of physical harm to others by reason of the mental disorder and appellant's history of violent behavior. Two of the 10 convictions involved sexual assaults. In 1999, appellant grabbed a 14-year-old girl, hugged her, and grabbed her buttocks, breasts, and vagina while exposing his penis. The girl struggled with appellant and managed to break free. The 2004 commitment offenses involved a similar sexual assault in which appellant grabbed the girls' buttocks and chased them while exposing himself. Appellant claimed the victims "overreacted" and "just got it wrong."

2

The trial court also considered four mental health evaluations. Dr. Philip Trompetter, a psychologist with the Department of State Hospitals, opined that exhibitionism was not a severe mental disorder. Doctor Elaine Tenney, a psychologist opined that appellant did not have a severe mental disorder because he was not hospitalized before the commitment or found to be incompetent to stand trial.

Doctor Jeannette Sanders, a CDCR psychologist, reported that appellant suffered from paraphilia not otherwise specified (sexual assault of minors and exhibitionism), that appellant met all the MDO criteria, and that appellant represented a substantial danger of harm to others by reason of the disorder and his prior criminal history for assault with a deadly weapon, attempted robbery, and resisting arrest.

The fourth mental health evaluator, Doctor Nicholas Minardi, opined that appellant's exhibitionism was a severe mental disorder and that appellant met all the MDO criteria.

The trial court credited Doctor Nastasi's expert opinion testimony and the reports of Doctors Sanders and Minardi, and found that appellant was an MDO. As in any substantial evidence case, we draw all reasonable inferences and resolve all conflicts in favor of the judgment. (*People v. Miller* (1994) 25 Cal.App.4th 913, 919.) It is the exclusive province of the trial judge to determine the credibility of a witness and the truth or falsity of the facts on which the MDO determination depends. (*Ibid.*)

*Severe Mental Disorder*

Appellant argues that exhibitionism is a not a severe mental disorder because he displayed no symptoms of mental illness and received treatment for adjustment disorder which is not a severe mental disorder. Section 2962, subdivision (a)(2) provides that a severe mental disorder includes "an illness or disease or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or which grossly impairs behavior . . . ." The definition of severe mental disorder is broad and not confined to a list of diseases. (*People v. Starr* (2003) 106 Cal.App.4th 1202, 1206 [pedophilia meets MDO definition and is consistent with general statutory purpose of protecting the public from violent and dangerous felons].)

Doctor Nastasi testified that appellant's exhibitionism was a sexual disorder, similar to paraphilia. The mental disorder grossly impaired appellant's perception of reality and his behavior, and manifested itself by recurrent and intense arousal from deviant sexual behavior. Doctor Nastasi's testimony was corroborated by Doctors Sanders and Minardi who reported that the exhibitionism was a severe mental disorder that substantially impaired appellant's thoughts and behavior.

Appellant argues that two other mental health evaluators (Doctors Trompetter and Tenney) reported that exhibitionism was not a severe mental disorder. On review, we are precluded from reweighing the evidence. The testimony of a single mental health professional is sufficient to support the judgment. (*People v. Bowers* (2006) 145 Cal.App.4th 870, 879; *People v. Valdez* (2001) 89 Cal.App.4th 1013, 1018.)

*Crime of Force or Violence*

Appellant argues that indecent exposure is not a crime of force or violence because appellant was not charged with or convicted of battery, lewd conduct, or a violent offense. Under the MDO statute, the commitment offense must include the use of force or violence (§ 2962, subd. (e)(2)(P)) or be a crime in which the defendant "expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used." (§ 2962, subd. (e)(2)(Q).)

Appellant exposed his penis, grabbed the victims' buttocks, and chased the victims to the gas station. After the police were called, appellant fled, returned, and again exposed himself while masturbating. When officers tried to make an arrest, appellant threatened to kill them and their families. The act of grabbing the girls by the buttocks and chasing them satisfies the use of force criterion. (See *People v. Valdez, supra,* 89 Cal.App.4th at p. 1107 [qualified mental health expert may render an opinion on force or violence criterion in MDO proceeding].) Appellant argues that he was not charged with or convicted of battery or lewd conduct, but there is no MDO requirement that the issue of force be adjudicated at the time of the conviction. (See *People v. Clark*, *supra,* 82 Cal.App.4th 1082-1084.)

4

In *People v. Kortesmaki* (2007) 156 Cal.App.4th 922, defendant set fire to a dumpster and was convicted of possession of flammable materials with the intent to set fire to property. We held that the force or violence criteria was not satisfied but the commitment offense did involve an implied threat to use force or violence for purposes of section 2962, subdivision (e)(2)(Q). (*Id.*, at p. 928.) Appellant's act of grabbing and chasing the victims, and his threat to kill the police officers was, at the very least, an implied threat of force or violence.

*Disorder Caused or Aggravated the Commitment Offense*

Appellant next argues that the severe mental disorder did not cause the commitment offenses. The MDO statute only requires that the severe mental disorder be one of the causes or an aggravating factor in the commitment offense. (§ 2962, subd. (b).) Doctors Nastasi, Sanders, and Minardi opined that the severe mental disorder was an aggravating factor in the commitment offenses because appellant could not control his sexual behavior. The police report indicates that appellant experienced psychiatric symptoms (appellant made "chirping sounds" and grabbed the girls; appellant later stood in front of the gas station, masturbating), consistent with appellant's long-standing history of sexually acting out behaviors. The testimony of Doctor Nastasi and reports of Doctors Sanders and Minardi support the finding that the mental disorder was an aggravating factor in the commitment offenses. (See e.g., *People v. Clark, supra,* 82 Cal.App.4th at pp. 1083-1084.)

*90 Days of Treatment*

Appellant argues that he did not receive treatment for his severe mental disorder for 90 days or more within the year prior to his parole or release date. (§ 2962, subd. (c).) Doctor Sanders reviewed appellant's central prison file and reported that appellant was diagnosed as suffering from exhibitionism disorder as early as March 2012. "At times since 03/23/12, exhibitionism has been specifically listed on his mental health treatment plan as the focus of treatment." Doctor Nastasi testified that the medical records in January, February and early March 2014 showed a diagnosis of exhibitionistic disorder and that appellant was treated by a psychologist, social worker, and psychiatrist.

5

There is no requirement that the 90 days of treatment be consecutive where, as here, the treatment is planned and approved for the severe mental disorder.  (*People v. Achrem* (2013) 213 Cal.App.4th 153, 157; *People v. Dodd* (2005) 133 Cal.App.4th 1564, 1567-1568.)

Appellant argues that in 2013, he was diagnosed with an adjustment disorder rather than exhibitionism and received medication for depression.  Appellant cites *People v. Sheek* (2004) 122 Cal.App.4th 1606 for the principle that the mental disorder on which the MDO commitment is sought must be the same mental disorder for which the defendant was treated.  In *Sheek,* the prisoner was first diagnosed with pedophilia less than 90 days before his parole release date (*Id.*, at p. 1611) and there were no medical records that the prisoner was treated specifically for pedophilia.  (*Id.*, at p. 1609.)  The prosecution claimed that the prisoner took Zoloft for a depressive disorder (Zoloft) which may have incidentally lowered the prisoner's libido, but that did not satisfy the 90 day treatment criteria.  (*Id.*, at p. 1611.)

Here, Doctors Nastasi, Sanders, and Minardi opined that appellant received treatment for exhibitionism/pedophilia for at least 90 days in the year preceding his release date.  Even Doctor Trompetter's report, which appellant claims is a favorable report, states that appellant received more than 90 days of treatment in the last 12 months.  Four mental health experts agreed that the 90-day treatment criteria was satisfied.  A fifth mental health expert, opined that it was not.  The evidence clearly supports the finding that the 90 day treatment criteria was satisfied.  (See *People v. Bowers, supra,* 145 Cal.App.4th at p. 879 [single mental health expert opinion constitutes substantial evidence].)

Appellant complains that the expert opinion testimony and written evaluations are based on appellant's treatment records, which is unreliable hearsay. [2] Appellant did not object, forfeiting the error.  (*People v. Miller, supra,* 25 Cal.App.4th at

---

[2] We rejected a similar argument in *People v. Stevens* (2013) formerly 213 Cal.App.4th 1401.  Petition for review was granted June 12, 2013. (S209643.)

6

p. 917; *People v. Tafoya* (2007) 42 Cal.4th 147, 166.) It is settled that experts may rely on hearsay in formulating their opinions where it is not offered for the truth of the facts stated but merely as the basis for the expert's opinion. (*People v. Cooper* (2007) 148 CalApp.4th 731, 747; *People v. Dodd, supra,* 133 Cal.App.4th at p. 1569.) Unlike the prisoner in *People v. Stevens, supra,* formerly 213 Cal.App.4th 1401, appellant admitted that he received more that 90 days of treatment for his mental disorder. Doctor Sanders' evaluation states that appellant "confirmed in [his] current clinical interview that over the past year, he has consistently been in treatment for Exhibitionism."

The judgment (MDO commitment order) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

7

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Pamela C. Hamanaka, Deputy Attorney General, for Plaintiff and Respondent.