Filed 9/17/15  P. v. Simon CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE **COURT OF APPEAL OF THE STATE OF CALIFORNIA**

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN PHILLIP SIMON,<br><br>    Defendant and Appellant. | 2d Crim. No. B260444<br>(Super. Ct. No. F472628)<br>(San Luis Obispo County) |

John Phillip Simon appeals the judgment and order of commitment, entered after a jury trial, finding that he is a sexually violent predator (SVP).  (Welf. & Inst. Code, § 6600.)  He contends the trial court prejudicially erred when it permitted an expert witness to testify about sexual offenses with which appellant had been charged, but was later acquitted.  We affirm.

*Facts*

*Appellant's Prior Convictions*

In 1985, appellant was sentenced to three years in state prison after having been convicted of three counts of lewd and lascivious acts upon a child, in violation of Penal Code section 288, subdivision (a).  In that case, appellant molested the 10-year old daughter of a woman with whom he had an intimate relationship.  The daughter complained that appellant went into her bedroom at 4:00 or 5:00 a.m. and touched her vagina.  She told him to get out of her room.  About an hour later, appellant returned to

1

her room and did the same thing again. The victim later stated that appellant had "bothered" her on at least 10 previous occasions.

In 1996, appellant was convicted of violating Penal Code section 288, subdivision (b) after he molested a sleeping 12-year old girl. In this incident, appellant pulled down the child's panties, restrained her, and tried to put his penis in her vagina. He left semen on her thighs and cheeks. At the time, appellant was in an intimate relationship with the victim's mother. In 2014, the victim told investigators that appellant began abusing her while she was in the fourth grade and the conduct continued through her fifth grade year. She estimated appellant molested her at least 50 times.

In 2002, appellant was found to meet the SVP criteria and was committed to Atascadero State Hospital (ASH). In 2005, while still a patient at ASH, appellant physically assaulted a staff member. He made criminal threats to another staff member and physically assaulted that person in 2006. Appellant was convicted of assault with great bodily injury and making criminal threats. He was sentenced to eight years in state prison. (Pen. Code §§ 245, subd. (a)(1), 422.) Between 2008 and 2012, appellant committed at least 10 serious violations of prison rules. Among other things, he was cited for fighting, battery on an inmate causing serious injury, fighting resulting in the use of chemical agents, assault on a peace officer and obstructing a peace officer.

*Sexual Offenses of Which Appellant was Acquitted*

Appellant was arrested in 1982 for molesting three other girls. He was charged with two counts of rape, one count of lewd acts on a child under 14, rape by force, and oral copulation. Appellant was acquitted of these offenses.

In 2014, an investigator from the district attorney's office interviewed the three complaining witnesses from this case, who are sisters. They explained that appellant had been in an intimate relationship with their mother and that he molested each of them while they were in their beds. When these assaults occurred, the sisters were 12, 8 and 4 years old, respectively. The oldest sister, Gina, related that appellant came into her bedroom and began touching her buttocks and vagina. She kicked him and pulled the covers over herself. Appellant offered her money, but she said no. Appellant left the

2

room. Moments later, Gina heard her eight-year old sister, Helen, screaming in a nearby bedroom. She went to investigate and found appellant lying on top of Helen, with his pants and underwear down around his knees. When appellant noticed Gina in the doorway, he got up and pulled up his pants. Helen said appellant had rubbed his erect penis against her vagina and tried to penetrate her. He also sucked on her breast and forced his penis into her mouth. Appellant did this twice more, during an assault that lasted five or ten minutes.

The sisters told the investigator that, after this series of molestations, they were removed from their home by social workers. They also described the molestations as going on for over one year. If they objected, they were beaten. Gina stated that appellant raped her. Another sister said that appellant applied a cigarette to her vagina. A social worker's report indicated that all three sisters had been sexually penetrated.

*Appellant's Mental Health Evaluations*

One of respondent's expert witnesses, Dr. Larry Wornion, a licensed clinical psychologist, evaluated appellant for purposes of the SVP commitment petition. Appellant refused to cooperate with the evaluation and declined to speak with Dr. Wornion. Wornion nevertheless reviewed medical records from appellant's treatment at ASH and diagnosed him with pedophilia, schizophrenia paranoid type, alcohol abuse in institutional remission, and anti-social personality disorder. He described appellant as paranoid, suspicious, and delusional. "His world is populated by people that have plans to hurt him . . . to implant things in him, [and] subject him to these special microwaves . . . ." Appellant's uncontrolled psychiatric disorder led to "episodes of continued violent behavior," including the fights and other physical misconduct he engaged in while in prison. Dr. Wornion described appellant as "a powder keg." He opined that appellant has "a well-entrenched and incredibly well-established delusional disorder which, in conjunction with all the other things that we've seen, make him extraordinarily high-risk."

Dr. Wornion reviewed medical records and staff reports from appellant's prior commitments as a mentally disordered offender (MDO) and as an SVP. Appellant

3

also received mental health treatment while in prison. Dr. Wornion reviewed those records as well. These records indicated that appellant suffered delusions and other psychotic symptoms for many years. During his time in custody, appellant has filed grievances and prison appeals in which he claimed that he was being bombarded by microwave rays that made him feel like a guinea pig and "increased his sexual tension." In 2008, he wrote a letter to a prison doctor in which he complained that he was normal, but that microwave technology was being used on him, which irritated his urethra, so that people could monitor his masturbatory habits. In 2013, appellant complained to ASH staff that he could feel a vibration in his groin area that he believed was caused by a device implanted there. Some staff notes described appellant as suspicious and paranoid, noting that some of his violent outbursts occurred as he complained of being monitored harassed by staff.

While in custody and while a patient at ASH, appellant has refused medication. He also declined to speak to Dr. Wornion, or to Dr. Coles, the second evaluator. Dr. Coles reviewed the same documents as Dr. Wornion and opined that appellant suffers from "pedophilic disorder," alcohol disorder, "schizophrenia, paranoid type and antisocial personality disorder." He also concluded that appellant is "volitionally impaired" by his "pedophilic disorder" and that he is "likely to engage in sexually violent predatory behavior as a result of his mental disorders."

*Defense Experts*

Dr. Theodore Donaldson, a forensic psychologist, disagreed with the diagnosis that appellant has antisocial personality disorder because he does not believe antisocial personality disorder is an actual disorder. He agreed that appellant suffers from schizophrenia or schizoaffective disorder, but opined that neither condition in and of itself would predispose an individual to commit violent sexual acts. He also found no evidence connecting appellant's disorder to his sexual behavior. Dr. Donaldson also disagreed that appellant has pedophilic disorder or pedophilia. Appellant's victims were always members of his household; his crimes were, in Dr. Donaldson's opinion, "opportunistic," rather than the product of a sexual preoccupation with children. In

4

addition, Dr. Donaldson pointed out, there is no evidence appellant collected pictures of children or ever tried to access child pornography. He did not display the type of intense or recurrent fantasies involving children that are part of the diagnostic criteria for pedophilia.

Dr. Carolyn Murphy, a psychologist in private practice, shared many of Dr. Donaldson's opinions. After reviewing the same documents as Dr. Wornion and Dr. Coles, Dr. Murphy concluded appellant does not have a diagnosed mental disorder that would predispose him to commit sex offenses. None of appellant's disorders appeared to have been specifically linked to his crimes. In addition, appellant's delusions were not specifically sexual in nature. Dr. Murphy opined that appellant does not meet the diagnostic criteria for pedophilia because there was an alternative explanation for the sexual assaults he committed. The assaults were random and triggered by opportunity, rather than the result of a specific sexual desire. Appellant's alcohol abuse may also have played a role in the offenses. Appellant did not demonstrate an exclusive sexual attraction to children, but was also willing to offend against adults, teens and preteens. She saw no evidence of any recurrent sexual interest in children over the last twenty years, or any behavior, such as possession of pornography that would indicate a sexually deviant interest in children.

Dr. Frederico Banales, a psychiatrist at ASH, treated appellant for about four months in 2013 and 2014. Unlike Dr. Wornion, Dr. Coles and Dr. Donaldson, Dr. Banales had talked to appellant on numerous occasions. He testified that appellant did not act out sexually or in a paraphilic manner; he was not aware of appellant having ongoing sexual fantasies involving children. Banales also did not believe appellant was psychotic.

Dr. Joseph Abrahamson, a staff psychiatrist at ASH, had been treating appellant since March 2014. He testified that appellant had been doing well in treatment and was not a serious behavioral problem at the hospital. Dr. Abrahamson opined that appellant's diagnosis with schizoaffective disorder was "unreasonable" because appellant was no longer experiencing psychotic symptoms.

5

*Discussion*

Appellant was acquitted of the offenses with which he had been charged in connection with the 1982 incidents. In 2014, an investigator with the district attorney's office interviewed the complaining witnesses from that case; the resulting report described many sex offenses, including offenses with which appellant was never charged. Both Dr. Wornion and Dr. Coles relied on the 1982 police report and 2014 investigator's report in forming their expert opinions that appellant meets the SVP criteria. Appellant contends the trial court erred when it admitted evidence of the 1982 incidents because he was acquitted of those alleged offenses. In addition, because the 2014 report was prepared more than 30 years after the alleged offenses, appellant contends the report is not the type of information expert witnesses could reasonably rely upon in forming their opinions. Appellant further contends the trial court should have excluded evidence of the 1982 incidents under Evidence Code section 352.

A qualified expert is entitled to render an opinion on the question of whether a person meets the SVP criteria because he or she has "a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Welf. & Inst. Code, § 6600, subd. (a)(1); *People v. Gardeley* (1996) 14 Cal.4th 605, 617.) "Expert testimony may . . . be premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by experts in the particular field in forming their opinions." (*People v. Gardeley, supra,* 14 Cal.4th at p. 618.) An expert may base his or her opinion "on information that is itself inadmissible hearsay if the information is reliable and of the type reasonably relied upon by experts on the subject." (*People v. Dodd* (2005) 133 Cal.App.4th 1564, 1569.) If this basic requirement of reliability is satisfied, "even matter that is ordinarily inadmissible can form the proper basis for an expert's opinion testimony. (*In re Fields* (1990) 51 Cal.3d 1063, 1070 [expert witness can base 'opinion on reliable hearsay, including out-of-court declarations of other persons'] . . . .) And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter . . . upon

which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, described the material that forms the basis of the opinion." (*People v. Gardeley, supra,* 14 Cal.4th at p. 618.)

In *People v. Dodd,* expert witnesses testified that Dodd had the severe mental disorder of pedophilia based on two prior convictions for unlawful sex with a minor and information concerning a third such incident that was contained in a report prepared by a parole agent. With respect to the third incident, the parole agent's report stated in full: " '[I]t should be noted that on 4/17/98, it was reported that Dodd was responsible for molesting a seven year old girl in Modesto, California. This prior case is strikingly similar to the present case [one of the underlying prior convictions] which involved Dodd allegedly molesting the child of his girlfriend. . . .' " (*People v. Dodd, supra,* 133 Cal.App.4th at p. 1567.) This was the only information in the record concerning the third incident, without which the diagnosis of pedophilia was unsupported.

We held the order committing Dodd as a mentally disordered offender (MDO) (§ 2960 et seq.), was not supported by substantial evidence because the parole agent's report was unreliable hearsay. (*Id.* at pp. 1568-1569.) In our view, the report's "brief and conjectural reference to the April 1998 incident fails to establish the occurrence of the incident with sufficient reliability to be considered by the experts in forming their opinions. We conclude that, without consideration of the April 1998 incident, there was no substantial evidence to support the finding that [Dodd] suffered from pedophilia." (*Id.* at p. 1569.) We explained further, the parole agent's report "does not identify the source of the information regarding the April 1998 incident, and nothing in the report or the record as a whole indicates that the parole agent obtained the information from police officers, witnesses, the victim and her family, arrest or crime reports, his own investigation, or any other source which could be deemed reliable. An expert opinion cannot reasonably be based on nonspecific and conclusory hearsay that does not set forth any factual details of an act necessary for the opinion." (*Id.* at p. 1570.)

7

Appellant relies on *Dodd, supra*, to contend the trial court erred when it permitted respondents' experts to testify concerning the 1982 incidents because he was acquitted and because an investigator's report, prepared 30 years later, was not reliable. Appellant's reliance is misplaced.

The trial court "has considerable discretion to control the form in which the expert is questioned to prevent the jury from learning of incompetent hearsay." (*People v. Price* (1991) 1 Cal.4th 324, 416.) There was no abuse of discretion here because the information on which the experts relied was more factually detailed and more reliable than the information at issue in *Dodd*. Expert witnesses reviewed and relied on a police report prepared in 1982, as well as the investigator's report prepared in 2014. Unlike the parole agent's report in *Dodd*, the police report and investigator's report on which respondent's experts relied in this case were not "brief and conjectural[,]" or "nonspecific and conclusory[.]" (*People v. Dodd, supra,* 133 Cal.App.4th at pp. 1569, 1570.) These reports provided the expert witnesses with detailed factual statements by the complaining witnesses obtained near the date of the offenses and confirmed many years later. Consequently, the trial court did not abuse its discretion when it permitted the expert witnesses to testify they had relied on these reports and to describe their content. (*People v. Catlin* (2001) 26 Cal.4th 81, 137.)

We further conclude the trial court did not abuse its discretion when it declined to exclude the evidence as unduly prejudicial under Evidence Code section 352. Evidence Code section 352 grants the trial court discretion to exclude evidence the probative value of which is substantially outweighed by the danger of undue prejudice, confusion, or time consumption. (*People v. Cudjo* (1993) 6 Cal.4th 585, 609.) The prejudice section 352 is designed to avoid is prejudice based on extraneous factors, not the damage to a defense that naturally flows from relevant, probative evidence. (*People v. Zapien* (1993) 4 Cal.4th 929, 958.) " 'In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In

8

such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1008-1009.)" (*People v. Doolin* (2009) 45 Cal.4th 390, 438-439.)

Here, the charges leveled against appellant in 1982 were that he sexually assaulted three young girls who were the children of a woman with whom he had a sexual relationship. Reports of those assaults were probative of the diagnosis that appellant has the mental disorder pedophilia and were relevant to the question of whether appellant's mental disorders make him a danger to others in that he is likely to engage in sexually violent criminal behavior. (Welf. & Inst. Code, § 6600, subd. (a)(1).) The evidence was not unduly prejudicial because the 1982 assaults are similar in kind and severity to those for which appellant was convicted. Evidence of the 1982 assaults was " 'no stronger and no more inflammatory' " than evidence of the crimes for which appellant was convicted in 1985 and 1996. (*People v. Eubanks* (2011) 53 Cal.4th 110, 144.) The trial court did not abuse its discretion when it permitted respondent's expert witnesses to rely on the 1982 allegations in forming their opinions concerning appellant's status as an SVP.

Appellant was acquitted of charges relating to the 1982 assaults. In addition, the reports on which the experts relied described at least one assault that was never the subject of criminal charges. Neither of these circumstances mandated exclusion of the evidence as a basis for the expert witnesses' opinion testimony. In a prosecution for a sex offense, a jury may be entitled to consider evidence that the defendant committed prior sex offenses, whether the defendant was charged with those offenses or was acquitted of them, to prove the defendant's propensity to commit sex offenses. (Evid. Code, § 1108; *People v. Villatoro* (2012) 54 Cal.4th 1152, 1160; *People v. Mullens* (2004) 119 Cal.App.4th 648, 664-665.) For the same reason here, the jury was entitled to consider evidence that expert witnesses relied on appellant's prior convictions and prior uncharged sex offenses in forming their opinions that appellant meets the SVP criteria.

Finally, we conclude any error in admitting evidence of the 1982 incidents was harmless because there is no reasonable probability the result would have been more

9

favorable to appellant had the evidence been excluded.  (*People v. Gonzales* (2013) 56 Cal.4th 353, 388-389.)  One of respondent's expert witnesses, Dr. Coles, testified he would have found appellant met the SVP criteria even without considering the 1982 incidents.  Even without considering the 1982 incidents, appellant has a long history of committing sexual offenses with convictions for multiple offenses in both 1985 and 1996.  While in prison, he violated prison rules by fighting with other inmates and staff.  He also assaulted staff while a patient at ASH.  Appellant has made delusional complaints, including that he was being bombarded by microwaves and that ASH staff were monitoring how much he masturbated.  The evidence that appellant meets the SVP criteria was overwhelming; there is no reasonable probability appellant would have obtained a more favorable result had evidence of the 1982 been excluded.

### *Conclusion*

The judgment and order of commitment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.


10

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Gerald L. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller, Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.